Docket No. 108855.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DENNIS LIGON, Appellant.

*Opinion filed November 18, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

At issue is whether the federal constitution requires appointment of counsel for indigent postconviction petitioners at the summary dismissal stage whenever the appellate court on direct review has declined to address an ineffective assistance of counsel claim because the facts needed to adjudicate the claim are *dehors* the record and thus cannot be resolved on direct review. For the reasons that follow, we hold that the constitution does not require the appointment of counsel in such cases.

Following a jury trial, defendant, Dennis Ligon, was convicted of aggravated vehicular hijacking (720 ILCS 5/18–4(a)(3) (West 2002)). The circuit court of Cook County sentenced him to a term of natural life in prison as a habitual offender. Defendant's conviction and

sentence were affirmed on direct appeal, but the appellate court declined to rule on two of his claims regarding ineffectiveness of trial counsel, finding that those issues could be more appropriately addressed in a proceeding for postconviction relief. *People v. Ligon*, 365 Ill. App. 3d 109, 122 (2006) (*Ligon I*). Defendant subsequently filed a *pro se* postconviction petition, but did not raise the two issues that the appellate court declined to adjudicate. The circuit court summarily dismissed defendant's postconviction petition as frivolous and patently without merit. The appellate court affirmed that dismissal. 392 Ill. App. 3d 988 (*Ligon II*). We allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

BACKGROUND

Defendant's trial began on April 2, 2003. Defendant was represented by assistant public defenders Anthony Thomas and Camille Calabrese. Just before opening statements on April 2, 2003, Thomas informed the court that he intended to call the defendant's son, Dennis Compton, as a witness, stating that he had interviewed Compton for the first time the previous day. Thomas further explained to the court that the name was given to him by the prosecution, which learned of Compton when interviewing another witness. The prosecutor did not object to the defense calling Compton, noting that she also had an opportunity to speak to him the prior day.

In her opening statement, Calabrese told the jury that this would be a "text book case of misidentification," stating that defendant's son, Dennis Compton, is almost his father's look-alike and that the jury would learn that "the actual story behind this case is of a father who is protecting his son." She also told the jury that she believed she was going to be able to produce Dennis Compton, noting that he had been subpoenaed. She stated that she was confident that after the jury heard his testimony, it would have a reasonable doubt as to defendant's guilt. She concluded that defendant "may be guilty of protecting his son, but that doesn't mean he's guilty of taking this automobile."

Briefly, the evidence presented by the State at trial included the testimony of several witnesses. Ana Diaz testified that on December 16, 2000, defendant approached her in broad daylight as she exited her red Ford pickup truck at a Sears parking lot off of Western

Avenue in Chicago. Defendant pushed a gun into her ribs and told her to leave the keys in the ignition and to get out. He then proceeded to drive away in her truck. On January 3, 2001, the day her truck was recovered by police and defendant was arrested, she immediately and unequivocally picked defendant out of a lineup as the man who stole her truck and held her up at gunpoint. She also identified a BB gun recovered by police from the truck as the gun used by defendant to commit the crime.

Three other witnesses that knew defendant testified that they observed him driving the truck between December 16, 2000, and January 3, 2001. On the evening of January 2, 2001, defendant drove Georgio Dawson, a 13-year old boy, and Tenita Barber, a 17-year-old girl, around in the truck. After dropping Dawson off at an apartment building where the truck was eventually recovered, defendant drove Barber around town drinking liquor and smoking marijuana with her. Defendant told Barber he had just bought the truck. Around 5:10 a.m., on January 3, 2001, the two returned to the place where they had left Dawson. Defendant honked his horn, but then got out of the truck when Dawson did not come out. After defendant had walked away from the truck, Dawson came out and got in the truck. Shortly thereafter, police arrived and discovered that the truck had been stolen. They searched it and recovered a BB gun from the driver's side. Dawson told police that the man who had been driving the truck was named "Dennis." Police then took Dawson to look for the man who had been driving the truck in question. Dawson pointed defendant out at an El station about a block and a half from where the truck had been parked. After verifying from defendant that his first name was Dennis, police placed him under arrest.

The jury found defendant guilty of aggravated vehicular hijacking. Following his trial, defendant filed a *pro se* motion for judgment notwithstanding the verdict, arguing, among other things, that his trial counsel was ineffective by confessing defendant's "guilt in protecting his son" and then not calling Dennis Compton to testify, thereby leaving the jury with the impression that defendant must have committed the crime. The trial court allowed the public defender's office to withdraw. The court appointed attorney Stephen Decker as defendant's counsel for the posttrial proceedings. After obtaining and reviewing all of the transcripts of defendant's trial, Decker filed a

supplemental motion for a new trial, which incorporated by reference the claims asserted in defendant's *pro se* motion. Decker's motion alleged in relevant part that trial counsel's performance was deficient in failing to produce Compton or explain his nonappearance after telling the jury during opening statements that Compton had committed the crime and had been subpoenaed to testify.

At the hearing on defendant's posttrial motion, Thomas, defendant's trial counsel, testified that prior to trial he developed a strategy of misidentification because he believed the descriptions of the hijacker more closely resembled Compton than defendant. During two interviews with defense counsel, Compton's account with regard to the red Ford pickup truck was erratic, contradictory and inconsistent. At one point during the interviews, when Thomas pointed out that Compton's account was inconsistent, Compton asked Thomas, "What do you want me to say?" This comment caused Thomas to believe that he would be suborning perjury if he called Compton to testify. Moreover, on the day that Compton was to testify, he was arrested in the courthouse for intimidating Dawson. Thomas was concerned that if Compton should be called, the facts of the intimidation offense would come out before the jury and harm defendant's case. Thomas noted that due to the above-discussed considerations, the jury would not view Compton as a favorable witness. Thomas expressed his concerns about Compton to defendant, but told defendant he would call Compton if defendant wanted. Defendant agreed that Compton should not be called. Thomas acknowledged that he did not call Compton to testify, nor did he display him to the jury.

Compton testified at the hearing that during his interviews with the public defenders he did not indicate what his testimony would be. During the hearing, Compton testified that neither he nor defendant committed the hijacking and that he had not witnessed who did. Compton admitted that during the trial, he was arrested and eventually pled guilty to communicating with the witness Dawson.

Defendant testified at the hearing on his posttrial motion that he did not tell Thomas not to call Compton. According to defendant, on the morning he was arrested, he was on his way to visit Compton, who happened to live near where the truck was recovered and who had knowledge of the truck's origins.

-4-

The trial court denied defendant's posttrial motion. At sentencing, the State presented certified copies of two of defendant's prior convictions. The trial court sentenced him to life in prison as a habitual offender, as it was required to do by statute (720 ILCS 5/33B–1 (West 2002)).

On direct appeal, defendant argued that he was denied the effective assistance of counsel in three ways: (1) his trial attorneys said in opening statements that they would produce defendant's look-alike son, Dennis Compton, at trial and would show that he lived near where the truck was recovered, but failed to do so; (2) they failed to properly investigate the case prior to trial when they did not interview Compton until after the trial had begun; and (3) they did not have a reasonable basis to believe that Compton would testify when they made their opening remarks. The appellate court affirmed defendant's conviction. *Ligon I*, 365 Ill. App. 3d 109. In doing so, it rejected his first ineffective assistance of counsel claim, which argued that his attorneys erred in stating during opening statement that they would produce Compton and then failed to do so, finding that trial counsel's decision was a matter of sound strategy. *Ligon I*, 365 Ill. App. 3d at 121. With respect to the latter two claims, the appellate court found that they were not raised in defendant's posttrial motion. Nor was any evidence related to them elicited during the hearing on the motion. *Ligon I*, 365 Ill. App. 3d at 122. The appellate court therefore refused to adjudicate the two contentions because they involved matters *dehors* the record that could be more appropriately addressed in a proceeding for postconviction relief. *Ligon I*, 365 Ill. App. 3d at 122. This court denied defendant's petition for leave to appeal on September 27, 2006.

In March 2007, defendant filed a *pro se* petition for postconviction relief, but made no mention of any of the claims of ineffective assistance of counsel litigated during the posttrial hearing or on direct appeal. Instead, defendant's petition alleged that the applicable sentencing statute was unconstitutional and that his attorney on direct appeal had rendered ineffective assistance by failing to argue the unconstitutionality of the sentencing statute. The circuit court summarily dismissed the petition as frivolous and patently without merit.

On appeal from the summary dismissal of his postconviction

-5-

petition, defendant did not contest the propriety of the circuit court's determination that the claims presented in his petition were frivolous and patently without merit. Rather, defendant argued that, following the direct appeal, the appellate court should have appointed counsel to represent defendant for the postconviction proceeding. Defendant contended that the appellate court's deferral to postconviction review of claims that defendant attempted to raise on direct appeal served to create an unconstitutional "additional barrier to direct review." Defendant maintained that the appellate court's action was similar to the statutory procedure invalidated by the United States Supreme Court in *Halbert v. Michigan*, 545 U.S. 605, 162 L. Ed. 2d 552, 125 S. Ct. 2582 (2005) (invalidated Michigan procedure that made first-tier appeals from guilty-plea convictions discretionary on application with the appellate court without requiring appointment of counsel for indigent *pro se* applicants), and that for the reasons enunciated in *Halbert* he was entitled to the assistance of counsel in presenting the unadjudicated direct appeal claims in a postconviction proceeding.

The appellate court rejected defendant's arguments. *Ligon II*, 392 Ill. App. 3d 988. First, the court found that defendant's claims of ineffective assistance of trial counsel could not be considered because defendant did not include them in the petition; they were therefore waived, and the appellate court had no authority to excuse the waiver. *Ligon II*, 392 Ill. App. 3d at 995, citing *People v. Jones*, 213 Ill. 2d 498, 505 (2004). Second, the appellate court rejected defendant's argument that deferral of the two ineffective assistance of counsel contentions from direct appeal to postconviction entitled defendant to the appointment of counsel. The court found that nothing in the treatment of the case on direct appeal removed it from the ambit of well-established precedent that has long recognized that "neither fundamental fairness nor due process considerations require that an attorney be appointed for postconviction petitioners." *Ligon II*, 392 Ill. App. 3d at 996, 1000, citing *People v. Jones*, 211 Ill. 2d 140, 148 (2004). The appellate court held that *Halbert* was inapplicable because "defendant's position in filing his *pro se* postconviction petition seeking collateral and second-tier review of his claims was not analogous to the defendant in *Halbert*, who was seeking first-tier review of his conviction." *Ligon II*, 392 Ill. App. 3d at 1000. The appellate court further determined that defendant was not wholly

without recourse in his ability to raise his ineffective assistance of trial claims, however, because he could do so in a successive postconviction petition if he could meet the strictures of the cause and prejudice test. *Ligon II*, 392 Ill. App. 3d 996, quoting *People v. Jones*, 211 Ill. 2d at 148-49.

## ANALYSIS

Before this court, defendant raises the same argument that he raised below in his appeal from the summary dismissal of his postconviction petition.

The Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2006)) provides a method by which persons under criminal sentence can assert that their convictions were the result of a substantial denial of their rights under the United States or the Illinois Constitution or both. 725 ILCS 5/122–1 *et seq.* (West 2006); *People v. Petrenko*, 237 Ill. 2d 490, 495-96 (2010). A postconviction proceeding is civil in nature (*People v. Johnson*, 191 Ill. 2d 257, 270 (2000)) and is a collateral attack on the prior conviction or sentence that does not relitigate a defendant's innocence or guilt (*People v. Evans*, 186 Ill. 2d 83, 89 (1999)). Therefore, any issues considered by the court on direct appeal are barred by the doctrine of *res judicata*, and issues which could have been considered on direct appeal are deemed procedurally defaulted. *People v. West*, 187 Ill. 2d 418, 425 (1999).

Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceeding took place. *People v. Jones*, 213 Ill. 2d 498, 503 (2004). The Act contemplates a three-stage process for non-death-penalty cases. *Jones*, 213 Ill. 2d at 503. A circuit court may summarily dismiss a postconviction petition if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122–2.1(a)(2) (West 2006). Moreover, any claim of substantial denial of constitutional rights not raised in the original or amended petition is deemed waived. 725 ILCS 5/122–3 (West 2006). An indigent *pro se* defendant is entitled to the appointment of counsel in a non-death-penalty case only if his petition survives the summary dismissal stage. 725 ILCS 5/122–2.1(a)(2), 122–4 (West 2006); *People v. Porter*, 122 Ill. 2d 64, 69-70 (1988).

But a *pro se* litigant need only present the gist of a constitutional claim to survive the summary stage of section 122–2.1. *Jones*, 213 Ill. 2d at 504. With regard to this requirement, a defendant at the first stage need only present a limited amount of detail (*People v. Hodges*, 234 Ill. 2d 1, 9 (2009)), and he need not make legal arguments or cite to legal authority (*People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). This is a purposely low threshold for survival because most petitions are drafted at this stage by defendants with little legal knowledge or training. *Hodges*, 234 Ill. 2d at 9. The summary dismissal of a postconviction petition poses a legal question that is subject to *de novo* review. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

In his brief before this court, defendant initially argues that given the evidence in the record from the posttrial hearing, the appellate court on direct appeal in *Ligon I* could have, and should have, ruled on all of his ineffective assistance claims. He also asserts that in *Ligon II*, the appellate court recognized that its refusal to adjudicate the two ineffective assistance claims on direct appeal was the result of a misapprehension of the record, as the court in *Ligon I* mistakenly believed that defense counsel had not interviewed Compton until after trial began. Defendant is completely wrong on both counts.

First, we note that the appellate court in *Ligon I* determined that the two ineffective assistance claims at issue here involved matters *dehors* the record that were more appropriate for a postconviction proceeding. This determination is *res judicata*. The appellate court's decision became final when leave to appeal from *Ligon I*, 365 Ill. App. 3d 109, was sought in this court in September 2006. See *People v. Collins*, 202 Ill. 2d 59 (2002). Therefore, the ruling that the two direct appeal claims of ineffectiveness were outside the record is unassailable at this point. Moreover, defendant's current argument was not only not raised below, he specifically disavowed it in the argument he made below in *Ligon II* where he underscored in his reply brief that he was "*not* arguing that [the appellate court on direct review] erred in declining to consider two of his ineffectiveness claims on direct appeal." (Emphasis in original.) Defendant continued with his argument in the appellate court as follows:

>"Rather, [defendant] is claiming that, once this court decided to relegate claims raised on direct appeal to the post-conviction process [*Ligon I*, 365 Ill. App. 3d at 122-23], the

equal protection and due process clauses of the constitution required the *automatic* appointment of counsel to raise those claims in a postconviction petition. See *Halbert*, 545 U.S. at 616-17; *Douglas*, 372 U.S. at 356. Thus, the claim of error here is the failure to appoint postconviction counsel before dismissing the petition, not this Court's decision to relegate claims to the postconviction process." (Emphasis in original.)

Under the circumstances, we find that defendant is now barred from advancing the argument that the appellate court improperly failed to adjudicate the ineffective assistance of counsel claims on direct appeal.

We also note that where, as here, the record is insufficient because it has not been precisely developed for the object of litigating a specific claim of ineffectiveness raised in the circuit court, thereby not allowing both sides to have an opportunity to present evidence thereon, such a claim should be brought on collateral review rather than on direct appeal. *People v. Bew*, 228 Ill. 2d 122, 134 (2008), citing *Massaro v. United States*, 538 U.S. 500, 504-06, 155 L. Ed. 2d 714, 720-21, 123 S. Ct. 1690, 1694 (2003); compare *People v. Whitehead*, 169 Ill. 2d 355, 372 (1996) (a claim of ineffective assistance of trial counsel cannot be considered on direct appeal where the evidentiary basis is *dehors* the record).[1] Here, the appellate court resolved the ineffective assistance claim that was actually raised in defendant's posttrial motion, and then correctly directed defendant to the postconviction process for resolution of the other two claims that were not precisely raised in his motion. See *Bew*, 228 Ill. 2d at 135.

Second, there is no indication from *Ligon II* that it believed that the court's refusal in *Ligon I* to adjudicate the ineffective assistance claims would have been any different had *Ligon I* not been mistaken about the timing of trial counsel's interview of Compton. *Ligon II* acknowledged in a footnote that *Ligon I* had mistakenly believed that defense counsel had not interviewed Compton prior to trial. This misapprehension clearly would not have affected the decision to defer adjudication of the third claim of ineffective assistance that defendant raised on direct review, however, because defendant's trial attorneys

---

[1] *Whitehead* was overruled on other grounds by *People v. Coleman*, 183 Ill. 2d 366, 382-83 (1998).

were not asked at the posttrial hearing about their reasons for their opening statement that Compton would testify even though it appears they had their doubts about him as a witness from their interview the prior day. The footnote in *Ligon II* went on to explain that the error in assessing the record was caused by defendant's repeated misstatements in his appellate briefs claiming that trial counsel had not interviewed Compton prior to trial. It must also be pointed out that had the appellate court undertaken an accurate reading of the record and then decided to adjudicate the second ineffective assistance claim–which alleged that defense counsel had not interviewed Compton *prior* to trial–the claim surely would have been rejected, as it was completely contradicted by the trial transcript, which shows that Thomas had interviewed Compton the day *before* trial started. As such, the court in *Ligon I* did defendant a favor by deferring resolution of the claims. Given that this is the appropriate method of treatment for claims that are not specifically raised at a posttrial hearing and where defendant has failed to prove ineffective assistance on the record presented to the reviewing court, we find no problem with the course of action taken by *Ligon I* in declining to reach the claims. See *Bew*, 228 Ill. 2d at 135 (court held that even though defendant had failed to prove ineffective assistance on the record presented on direct review, he could still raise those claims under the Post-Conviction Hearing Act). Accordingly, we reject defendant's argument that a different outcome should obtain here just because the appellate court in *Ligon I* mistakenly believed that defendant's trial counsel had not interviewed Compton until after trial had begun.

We turn now to the main issue raised by defendant's appeal. He asserts that in light of the United States Supreme Court's decision in *Halbert*, dismissal of his postconviction petition violated the equal protection and due process clauses of the federal constitution because counsel was not appointed to assist him in preparing his postconviction petition. Despite the well-settled law in this state that *pro se* litigants are not constitutionally entitled to the appointment of counsel in non-death-penalty cases at the summary dismissal stage (725 ILCS 5/122–2.1(a)(2), 122–4 (West 2006); *People v. Porter*, 122 Ill. 2d 64, 69-70 (1988)), defendant maintains that *Halbert* alters this rule, at least under the circumstances of the present case.

We begin our analysis of *Halbert*'s application to the current case

-10-

by discussing the United States Supreme Court precedent that informed the *Halbert* decision. In *Douglas v. California*, 372 U.S. 353, 356-57, 9 L. Ed. 2d 811, 814, 83 S. Ct. 814, 816 (1963), the Court held that an appellate court is required to provide court-appointed counsel to an indigent defendant when that court reviews an as-of-right appeal from a criminal conviction. The state procedure in that case required that the appellate court, upon receiving an indigent's request for counsel, make an independent investigation and determine if the appointment of counsel would benefit the defendant or the courts. *Douglas*, 372 U.S. at 354-55, 9 L. Ed. 2d at 813, 83 S. Ct. at 815. The kind of appeal available to the defendant depended upon whether he could afford counsel: if not, the appellate court would "prejudge the merits before it [could] even determine whether counsel should be provided." *Douglas*, 372 U.S. at 356, 9 L. Ed. 2d at 814, 83 S. Ct. at 816. On the other hand, a nonindigent defendant with counsel was "not faced with the preliminary '*ex parte* examination of the record,' [citation] but had their arguments presented to the court in fully briefed form." *Ross v. Moffitt*, 417 U.S. 600, 608, 41 L. Ed. 2d 341, 349, 94 S. Ct. 2437, 2442-43 (1974), quoting *Douglas*, 372 U.S. at 356, 9 L. Ed. 2d at 814, 83 S. Ct. at 816. The Court concluded that an appeal without the benefit of organization and argument by counsel would be a "meaningless ritual" for most indigents. *Douglas*, 372 U.S. at 358, 9 L. Ed. 2d at 815, 83 S. Ct. at 817. Thus, *Douglas* taught that "where the merits of the one and only appeal an indigent has of right are decided without benefit of counsel *** an unconstitutional line has been drawn between rich and poor." (Emphasis omitted.) *Douglas*, 372 U.S. at 357, 9 L. Ed. 2d at 814, 83 S. Ct. at 816. *Douglas* involved only a defendant's first appeal of right and did involve the appointment of counsel " 'for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court.' " *Martinez v. Schriro*, No. 09–15170, slip op. at 4 (9th Cir. September 27, 2010), quoting *Douglas*, 372 U.S. at 356, 9 L. Ed. 2d at 814, 83 S. Ct. at 816.

In *Ross v. Moffitt*, the Court refused to extend the right to counsel beyond the first appeal as of right from a conviction. *Ross*, 417 U.S. at 610-11, 41 L. Ed. 2d at 351, 94 S. Ct. at 2443-44. There, the state

-11-

supreme court provided discretionary review of a conviction after mandatory review by an intermediate appellate court, and the state supreme court's acceptance of the appeal was based on public importance and other indicia not related to the merits. *Ross* found it significant that the defendant had the benefit of counsel in his appeal to the appellate court, along with the record, the opinion from the court and counsel's arguments. The work product of counsel, supplemented with defendant's *pro se* petition for review, would provide the state supreme court with an adequate basis to grant or deny review. *Ross*, 417 U.S. at 615-17, 41 L. Ed. 2d at 353-54, 94 S. Ct. at 2446-67. *Ross* rejected due process and equal protection challenges to the procedure, concluding that a state "need not provide any appeal at all" and the state does not act unfairly by refusing to provide indigents with counsel "at every stage of the way." *Ross*, 417 U.S. at 611, 41 L. Ed. 2d at 351, 94 S. Ct. at 2444. *Ross* solidified its conclusion by discussing the role of the state supreme court as not sitting to correct an adjudication of guilt in individual cases, but rather to review cases where a matter of public interest was at stake, a significant legal principle was involved or a conflict with precedent existed. *Ross*, 417 U.S. at 615, 41 L. Ed. 2d at 353-54, 94 S. Ct. at 2446.

Over a decade after *Ross*, the Supreme Court decided *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 545, 107 S. Ct. 1990, 1993 (1987), which held that there is no federal constitutional right to counsel for an appeal mounting a collateral attack against a criminal conviction. *Finley* noted that previous cases had established that the right to the appointment of counsel "extends to the first appeal of right, and no further." *Finley*, 481 U.S. at 555, 95 L. Ed. 2d at 545, 107 S. Ct. at 1993. The Court wrote: "We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Finley*, 481 U.S. at 555, 95 L. Ed. 2d at 546, 107 S. Ct. at 1993. The Court continued by observing as follows:

> "[T]he analysis that we followed in *Ross* forecloses respondent's constitutional claim. *** Postconviction relief is even further removed from the criminal trial than is

discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. [Citation.] It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief [citation], and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.

Nor was the equal protection guarantee of 'meaningful access' violated in this case. By the time respondent presented her application for postconviction relief, she had been represented at trial and in the Supreme Court of Pennsylvania. In *Ross*, we concluded that the defendant's access to the trial record and the appellate briefs and opinions provided sufficient tools for the *pro se* litigant to gain meaningful access to courts that possess a discretionary power of review. [Citation.] We think that the same conclusion necessarily obtains with respect to postconviction review." *Finley*, 481 U.S. at 556-57, 95 L. Ed. 2d at 547, 107 S. Ct. at 1994.

We now turn to *Halbert*, where the Supreme Court addressed whether indigent criminal defendants who seek to bring a first-tier direct appeal after pleading guilty or *nolo contendere* have a right to appointed counsel. Specifically at issue was both a State of Michigan law that provided that an appeal by a defendant who pleads guilty or *nolo contendere* is discretionary with the appellate court and a state procedure whereby judges denied the appointment of counsel for indigents convicted under such pleas. *Halbert* found that the case before it was framed by two prior decisions of the Court: *Douglas* and *Ross*. *Halbert*, 545 U.S. at 616, 162 L. Ed. 2d at 564, 125 S. Ct. at 2590. The Court held that *Douglas* provided the controlling precedent, and that two aspects of the Michigan appellate process led it to that conclusion. *Halbert*, 545 U.S. at 616-17, 162 L. Ed. 2d at 564, 125 S. Ct. at 2590. First, in deciding whether to grant leave to appeal upon application from a plea-based conviction, the Michigan appellate court looks to the merits of the claim spelled out in the application. Therefore, similar to the defendants' appeals in *Douglas*, the defendant's appeal in *Halbert* was subject to *ex parte* review without benefit of counsel's argument, and, although the appeal was

-13-

" 'discretionary,' " the appellate court sat in an " 'error-correction instance,' and not as the Michigan Supreme Court." *Martinez*, slip op. at 6, quoting *Halbert*, 545 U.S. at 617-20, 162 L. Ed. 2d at 564-66, 125 S. Ct. at 2590-92. Second, the Court emphasized that indigent defendants pursuing first-tier review in the appellate court are generally ill-equipped to represent themselves, and without counsel's assistance in preparing the application for leave to appeal, an indigent "would be 'disarmed in [his] endeavor to gain first-tier review.' " *Martinez*, slip op. at 6, quoting *Halbert*, 545 U.S. at 617-20, 162 L. Ed. 2d at 564-66, 125 S. Ct. at 2590-92. It was also highly significant to the decision that the only manner of review afforded a plea-convicted defendant under the Michigan procedure was discretionary, and this appeal was the first, and likely the only, direct review of defendant's conviction. *Halbert*, 545 U.S. at 618-19, 162 L. Ed. 2d at 565, 125 S. Ct. at 2591. *Halbert* therefore concluded that review of the leave to appeal application was tantamount to a first-tier proceeding that mandated counsel pursuant to *Douglas*. *Martinez*, slip op. at 6, quoting *Halbert*, 545 U.S. at 609, 162 L. Ed. 2d at 559, 125 S. Ct. at 2586. Accordingly, the defendant in *Halbert* was entitled to the assistance of counsel to pursue his first, albeit discretionary, appeal from his conviction under the Michigan scheme. See *Martinez*, slip op. at 6.

In the present case, defendant urges a right to counsel on collateral review in a postconviction proceeding, as that was essentially the first genuine opportunity he had to present his ineffective assistance of trial counsel claims, which as discussed above, were not appropriate for direct review. We note that under Illinois law, a collateral postconviction proceeding is most often the first point at which an ineffective assistance of counsel claim will be presented. Indeed, issues that could have been considered on direct appeal are deemed procedurally defaulted in a postconviction proceeding. *West*, 187 Ill. 2d at 425. Defendant argues, therefore, that his contention is similar to those considered in *Halbert* and *Douglas*. He makes four basic points in support of his argument: (1) the postconviction proceeding would be the first time, and thus the "first-tier," that he would have been allowed to receive an adjudication on the two ineffective assistance claims in question; (2) because the Post-Conviction Hearing Act does not provide for appointment of counsel until after an

indigent defendant has stated the gist of a meritorious claim, he did not have the assistance of counsel in preparing his petition; (3) *pro se* defendants are not adequately equipped to pursue this sort of first-tier review; and (4) defendant's premature assertion of the two ineffective assistance claims not adjudicated on direct review somehow placed him in a different position from defendants who wait to bring such claims until postconviction, so that he should be appointed counsel even if the others are not.

We find defendant's arguments unpersuasive. There is no federal constitutional right to the assistance of counsel connected with proceedings seeking collateral relief, even where those proceedings are the first tier of review for an ineffective assistance of counsel claim. See *Martinez*, slip op. at 6; see also *Finley*, 481 U.S. at 555, 95 L. Ed. 2d at 545, 107 S. Ct. at 1993. We are not aware of any federal or state cases to the contrary; indeed our research indicates that all of the courts that have touched upon the subject in the wake of *Halbert* agree that there is no federal constitutional right to the assistance of counsel in a collateral proceeding. See, *e.g.*, *Martinez*, slip op. at 6; *Lopez v. Wilson*, 426 F.3d 339, 354, 356-57 (6th Cir. 2005); *Muniz v. Suthers*, No. 06–1149 (10th Cir. December 18, 2006) (unpublished opinion finding that *Halbert* "extended the right to counsel to a class of discretionary direct appeals, *Halbert* did not overrule clearly established Supreme Court precedent that individuals have no right to counsel in post-conviction proceedings"); *Hnatiuk v. Rapelje*, No. 2:08–CV–11574 (E.D. Mich. May 7, 2010); *State v. Lopez*, 156 N.H. 193, 197-98, 931 A.2d 1186, 1190-91 (2007) ("*Halbert* did not question the authority of the *Finley* decision establishing that there is no right to counsel in an appeal of a collateral attack on a criminal conviction. We decline to read such a requirement into the United States Constitution when the United States Supreme Court has not done so itself."); *Fluker v. State*, 17 So. 3d 181, 183 (Miss. App. 2009); see also *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. ___, 174 L. Ed. 2d 38, 129 S. Ct. 2308 (2009) (postconviction proceedings are sufficiently removed from criminal trials as to engender different levels of due process protections, and the *Brady* obligations imposed on prosecutors at trial are not constitutionally required during postconviction proceedings).

In *Martinez v. Schriro*, No. 09–15170, slip op. at 7 (9th Cir.

September 27, 2010), the Court of Appeals, Ninth Circuit, recently concluded, under circumstances similar to the present case, that the right to counsel is not triggered in a collateral proceeding even where the proceeding would represent the defendant's first opportunity to obtain review of his ineffective assistance claims. In *Martinez*, the defendant's convictions and sentences were affirmed on direct appeal. Under Arizona law, ineffective assistance of trial counsel claims cannot be brought on direct review, but instead must be brought in a postconviction proceeding. The defendant's direct appeal counsel filed a postconviction proceeding on the defendant's behalf during the pendency of the direct appeal, but then proceeded to file a motion indicating that he had reviewed the trial record and did not find any tenable issues. Under Arizona law, the defendant was then allowed 45 days to file a *pro se* petition for postconviction relief. Defendant did not file such a petition, and he later alleged in a successive postconviction petition that his appellate counsel had not informed him of the requirement to file the petition within the 45-day period. Defendant also alleged that he had valid ineffective assistance of trial-counsel claims that he could have raised in his first postconviction proceeding. Defendant's successive petition was dismissed by the Arizona superior court, which found his claims procedurally defaulted due to the defendant's failure to raise them in the initial postconviction proceeding. The appellate court affirmed, and the Arizona Supreme Court denied review. See *Martinez*, slip op. at 2.

The defendant then filed a *habeas* petition in federal district court, which was denied. On appeal to the Ninth Circuit Court of Appeals, the defendant argued that he was entitled to the effective assistance of counsel in connection with his first postconviction petition because that proceeding was the first opportunity for him to present his claims that his trial counsel had rendered ineffective assistance, thus making the situation similar to *Halbert*. The *Martinez* court rejected the claim, finding the case more like *Ross* than *Halbert*. *Martinez*, slip op. at 8. *Martinez* noted that just like in *Ross*, the defendant had "already received direct review of his conviction and received the assistance of counsel in connection with that appeal." *Martinez*, slip op. at 8. In *Halbert*, by contrast, the defendant sought the "functional equivalent of direct review, the first appeal of his conviction." *Martinez*, slip op. at 8. The court concluded that even if collateral review offered the

-16-

first tier of review for the defendant's ineffective assistance claims, it nonetheless is "not analogous to a direct appeal–or the *first* opportunity for him to obtain review of his conviction–so as to entitle him to effective counsel" (emphasis added) and therefore the case is not controlled by *Douglas* and *Halbert*. *Martinez*, slip op. at 8.

*Martinez* then addressed the contention that *pro se* defendants are ill-equipped to represent themselves in collateral proceedings. The court was unmoved by this general assertion, noting the assistance of counsel would "aid any indigent defendant in pursuing review of his conviction, whether by first-tier or second-tier appeal, or by collateral review." *Martinez*, slip op. at 8, citing *Ross*, 417 U.S. at 616, 41 L. Ed. 2d at 354, 94 S. Ct. at 2446-47. *Martinez* found it relevant that the defendant pursuing collateral review faces less of a handicap than a defendant pursuing a first appeal because a collateral-review defendant has already received the assistance of counsel in a prior proceeding, like the defendant in *Ross*. *Martinez*, slip op. at 8. A defendant pursuing collateral review "would have 'at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case.' " *Martinez*, slip op. at 8, quoting *Ross*, 417 U.S. at 615, 41 L. Ed. 2d at 353, 94 S. Ct. at 2446. *Martinez* concluded that the defendant did not face the same burden and disadvantages of a defendant pursuing direct review without counsel's assistance, and even though collateral review might offer the first opportunity to present a particular claim, the defendant had already benefitted from counsel's assistance in the direct appeal. *Martinez*, slip op. at 8.

We find the rationale of *Martinez* on this point to be persuasive. The defendant in *Halbert* faced "far more daunting legal hurdles" than defendant in our case. *Ligon II*, 392 Ill. App. 3d at 999. Defendant in *Halbert* had to file an application for review setting forth the law that supports the defendant's position and explaining how that law applies to the facts of the case. *Halbert*, 545 U.S. at 622, 162 L. Ed. 2d at 567-68, 125 S. Ct. at 2593-94. Here, in contrast, defendant needed only to present the "gist of a constitutional claim" to survive summary dismissal. *Jones*, 213 Ill. 2d at 504. Moreover, he only needed to present a "limited amount of detail" (*Hodges*, 234 Ill. 2d at 9) and did not need to "make legal arguments or cite to legal authority"

(*Gaultney*, 174 Ill. 2d at 418). This is a purposely low threshold that is one of the factors that distinguishes this case from *Halbert* and *Douglas*.

We further note that defendant in the present case was much more equipped to present his claims on collateral review than any of the defendants in the cases mentioned above, including *Martinez*. Here, defendant was armed with the following at the time he prepared his petition for postconviction relief: (1) copies of the petition for leave to appeal drafted by his appellate lawyer, which included 4½ pages on the issue of ineffective assistance of trial counsel; (2) copies of his appellate counsel's appellant and reply briefs; (3) the petition for rehearing prepared by appellate counsel, which also argued the ineffective assistance of trial counsel; and finally (4) the appellate court's published opinion (see *Ligon I*, 365 Ill. App. 3d at 122), which set forth the two ineffective assistance claims and expressly stated that they could be " 'addressed in a proceeding for postconviction relief.' " *Ligon II*, 392 Ill. App. 3d at 999, quoting *Ligon I*, 365 Ill. App. 3d at 122. Thus, defendant was in an even better position to raise his claims in a postconviction proceeding than most other defendants who must raise their ineffective assistance of counsel claims in a postconviction proceeding without having had any specific input from counsel or the court related to those claims. Under the circumstances, we find no merit to defendant's assertion that his premature assertion on direct appeal of his unadjudicated claims somehow tipped the scale in his favor so that he should be appointed counsel in this case even if others who must wait to raise ineffective-assistance claims until postconviction are not appointed counsel at the summary dismissal stage.

*Martinez* next addressed the defendant's argument that collateral review of his ineffective-assistance claim involves a "determination on the merits." *Martinez*, slip op. at 9. *Martinez* rejected this contention, finding that the case did not involve a determination on the merits in the same way that *Halbert* and *Douglas* did. *Martinez*, slip op. at 9. This was because there was no impediment presented to the defendant gaining first-tier review of his conviction, and the court performed no "gatekeeping function" that would bar the defendant from presenting his ineffective assistance of counsel claim. *Martinez*, slip op. at 9. Similarly, in case before us there was no obstacle presented by the

-18-

court to a review of defendant's conviction on direct appeal, and defendant merely had to allege his ineffective assistance claims in his postconviction petition to receive the appointment of counsel. Thus, there was no "gatekeeping function" imposed in this case.

*Martinez* concluded its analysis by finding that neither a due process nor an equal protection rationale were applicable to the case. *Martinez*, slip op. at 9. The due process rationale did not fit because the state has no duty to provide for an appeal of a criminal conviction and no duty to provide for collateral review either. *Martinez*, slip op. at 9. The equal protection clause was not violated because there were no unreasoned distinctions in this case, and the clause does not require absolute equality or the elimination of economic disparities. *Martinez*, slip op. at 10.

We find the federal Court of Appeals decision in *Martinez* to be well reasoned and persuasive. We therefore adopt its reasoning. Accordingly, we conclude that defendant had no right to the appointment of counsel at the summary dismissal stage of his postconviction proceeding, even where the proceeding may have presented the first real opportunity he had to raise two of his claims of ineffective assistance of trial counsel.

As a final matter, we note that defendant made the alternative argument in his briefs to this court that we should exercise our supervisory authority to remove the barrier to appellate court review set forth in *Jones*, 213 Ill. 2d at 508, and then remand the cause to the appellate court for consideration of the unadjudicated claims. We find that defendant forfeited this argument by failing to raise it in his petition for leave to appeal before this court. See *People v. Williams*, 235 Ill. 2d 286, 298 (2009). At any rate, the issue is moot given our resolution of the above-discussed issue, which *was* raised in defendant's petition for leave to appeal, and our holding that, under the circumstances of the present case, defendant had no federal constitutional right to the appointment of counsel at the summary dismissal stage of the postconviction proceeding.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the order of the circuit court dismissing

-19-

defendant's postconviction petition.

*Affirmed.*