**NOTICE**
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180598-U

NO. 4-18-0598

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
September 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| LYARRON T. EMERS, | ) | No. 16CF426 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's dismissal of defendant's amended postconviction petition at the second stage of postconviction proceedings as defendant failed to make a substantial showing he was denied the effective assistance of trial counsel.

¶ 2    In April 2017, defendant, Lyarron T. Emers, filed *pro se* a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), alleging ineffective assistance of his trial counsel. In April 2018, defendant, through his appointed counsel, filed an amended postconviction petition and the State filed a motion to dismiss. In August 2018, the trial court entered a written order granting the State's motion to dismiss defendant's amended postconviction petition.

¶ 3        Defendant appeals, arguing the trial court erred by denying his claim of ineffective assistance of counsel without a third-stage evidentiary hearing based on his trial counsel's failure to (1) call Abdullah Aziz as a witness and (2) introduce defendant's water bills into evidence. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        On March 23, 2016, members of the United States Marshals Service and Champaign County Street Crimes Task Force located and arrested defendant at the Common Ground Food Co-op in Urbana, Illinois, where defendant worked in the delicatessen. Defendant was served with a Champaign County warrant for home invasion and was also the subject of an outstanding Illinois Department of Corrections parole warrant. Upon his arrest, the officers located on defendant's person a total of 18 baggies containing substances which later tested positive for cannabis (approximately 2 grams) and cocaine (approximately 14 grams).

¶ 6        In March, April, and June 2016, the State charged defendant by information with manufacture or delivery of a controlled substance (15 grams or more but less than 100 grams of a substance containing cocaine), a Class X felony (720 ILCS 570/401(a)(2)(A) (West 2014)) (count I); unlawful possession of a weapon by a felon on mandatory supervised release, a Class 2 felony (720 ILCS 5/24-1.1(a) (West 2014)) (count II); unlawful possession of a controlled substance (15 grams or more but less than 100 grams of a substance containing cocaine), a Class 1 felony (720 ILCS 570/402(a)(2)(A) (West 2014)) (count III); and unlawful possession with intent to deliver a controlled substance (1 gram or more but less than 15 grams of a substance containing cocaine), a Class 1 felony (720 ILCS 570/401(c)(2) (West 2014)) (count IV).

¶ 7        In September 2016, the trial court ordered counts I, III, and IV severed from count II for trial, and the State withdrew counts I and III.

¶ 8                                    A. Defendant's Jury Trial

¶ 9            In February 2017, the trial court held a three-day jury trial. Because this case comes before us on dismissal of defendant's amended postconviction petition at the second stage, we discuss only those facts relevant and necessary to provide sufficient context.

¶ 10           Detective Robert Sumption with the Champaign Police Department testified he placed defendant under arrest as defendant walked in the back door of the Common Ground Food Co-op. Sumption escorted defendant to the parking lot where he searched defendant's outer clothing and discovered multiple individual bags, which appeared to contain cannabis and a "white rocklike substance," packaged inside a larger plastic bag between defendant's buttocks. The items were then turned over to Champaign police officer James Kerner. Sumption also recovered a key ring containing a house key, "a key fob for a vehicle, as well as ignition keys and door keys for a vehicle" from defendant's pants pocket. Sumption testified the house key was used to gain access to the residence at 905 Prestwick Point in Champaign, Illinois, during the execution of a search warrant. On cross-examination, Sumption explained the vehicle keys he recovered from defendant's pants pocket belonged to "a blue SUV" and stated he prepared a towing report for the vehicle. The towing report indicated the vehicle was a blue, 1994 Chevrolet Blazer and listed Abdullah Aziz as its registered owner.

¶ 11           Officer Kerner testified as an expert in the field of packaging, delivery, and use of cocaine. Kerner identified People's exhibit No. 1 as "the seventeen bags of cocaine that were individually packaged, that were located by Detective Sumption *** in the Defendant's buttocks area." Based on his experience, Kerner stated the seventeen bags were "about $1,700.00 worth of cocaine" and "packaged for sale and delivery, not for personal consumption."

¶ 12       Kerner also testified he participated in the execution of the search warrant at 905 Prestwick Point and stated he was "tasked with collecting all items of evidentiary value that were found inside the residence." Kerner testified he recovered (1) a two-ounce bottle of inositol powder, which is a white, powder-based, dietary supplement "routinely utilized by cocaine dealers to cut or mix with their cocaine product;" (2) two digital scales which field-tested positive for the presence of cocaine; and (3) an open box of sandwich bags from the top right kitchen cabinet next to the refrigerator.

¶ 13       Kerner further testified he recovered (1) an empty bottle of inositol powder, (2) another digital scale which field-tested positive for the presence of cocaine, (3) a ziplock bag containing "numerous other smaller ziplock baggies," (4) another open box of sandwich bags, and (5) a prescription pamphlet for defendant from the top left bathroom drawer. Kerner also recovered an earnings statement for defendant from the Common Grounds Food Co-op from the top left kitchen drawer.

¶ 14       Investigator Seth Herrig of the Champaign County Sheriff's Office testified he assisted in executing the search warrant at 905 Prestwick Point and stated his responsibilities were to photograph the premises and the items found therein. People's exhibit No. A-15 was a photograph depicting "an earning statement from the Common Ground Food Co-op with [defendant's] name on it." People's exhibit No. A-18 was a photograph depicting another "piece of mail with [defendant's] name on it *** located in 905 Prestwick Point." On cross-examination, Herrig testified defendant's earnings statement was addressed to 3605 Christopher Circle in Urbana, Illinois, and the other piece of mail for defendant was addressed to 1305 Christopher Circle in Urbana, Illinois.

¶ 15 Defense counsel called Tawanna Williams, a hair stylist and defendant's younger sister. Williams testified she and defendant lived together at 1901 Joanne Lane in Champaign, Illinois, at the time of his arrest. Williams stated defendant helped her with the rent and "put the water in his name." Defendant had a problem with drugs, which Williams stated was a reason she decided to move out.

¶ 16 Defense counsel next called Trisha Fitton, defendant's former paramour and with whom defendant shared one child. Fitton testified she had a three-month relationship with defendant which ended in 2014 due to defendant's drug problem and infidelity. Fitton stated, "We had had a relationship, tried to make the relationship work, kind of around the time of the baby and that was not able to be done. So, we have maintained contact with each other. We have been intimate, but we cannot make a relationship work." Fitton testified she moved to 905 Prestwick Point in August 2015 and remained there until April 2016.

¶ 17 In September 2015, Aziz moved into the residence with Fitton. Fitton testified Aziz was defendant's uncle and she "was helping him out." Fitton was given two "master keys" as part of her lease, and each key "said 905P on it." Fitton then identified People's exhibit No. A-8 as a photograph depicting "the lock on the front door with the key, 905P. That is Abdullah Aziz's key. I can tell by the key chain." Fitton also stated Aziz owned "a blue Chevy Blazer, *** older style truck."

¶ 18 Fitton testified the inositol powder belonged to her, and she used the digital scales and sandwich bags for her own personal use. Fitton also identified several items of clothing, recovered by police, which she stated belonged to Aziz. On cross-examination, Fitton admitted defendant visited her at 905 Prestwick Point "once or twice every couple weeks." Fitton also

stated defendant and Aziz both worked at the Common Ground Food Co-op and sometimes carpooled together.

¶ 19 At the conclusion of the trial, the jury found defendant guilty of count IV, unlawful possession with intent to deliver a controlled substance (1 gram or more but less than 15 grams of a substance containing cocaine).

¶ 20 On March 13, 2017, defense counsel filed a motion for a new trial.

¶ 21 On April 5, 2017, the trial court commenced defendant's sentencing hearing and addressed defendant's pending posttrial motions. At the outset of the proceedings, defense counsel stated,

"Your Honor, I've been handed some handwritten affidavits by the Defendant. They're affidavits that someone prepared. I guess the Defendant prepared. And he is asking that these affidavits from Trisha Fitton, one is an affidavit from Abdullah Aziz, which—Judge, he wants these to be added to the record—or, he wants these to be considered as far as the motion for new trial."

The court denied defendant's request to admit the affidavits, stating, "These are not relevant to any of the issues that would support the granting of a new trial. *** It all appears to be cumulative, and there's absolutely no reason to admit these." The court agreed, however, to supplement the record by placing the affidavits on file "to document what was tendered to the Court."

¶ 22 The trial court sentenced defendant to 18 years in prison. In doing so, the court stated it considered the presentence report; the evidence in aggravation and mitigation; defendant's character, history, and rehabilitative potential; and the arguments of counsel.

¶ 23 B. Direct Appeal

¶ 24        Defendant filed a direct appeal, arguing "the trial court improperly considered his refusal to assist in the preparation of a presentence investigation report as a factor in aggravation." *People v. Emers*, 2019 IL App (4th) 170254-U, ¶ 21. We affirmed the trial court's judgment. *Id.* ¶ 34.

¶ 25                          C. Postconviction Proceedings

¶ 26        On April 10, 2017, while his direct appeal was pending, defendant filed *pro se* a postconviction petition alleging he received ineffective assistance of his trial counsel.

¶ 27        In December 2017, defendant's postconviction petition advanced to the second stage of postconviction proceedings as no action was taken on the petition within 90 days of its filing (see 725 ILCS 5/122-2.1(a) (West 2016)), and the trial court appointed counsel.

¶ 28        On April 16, 2018, defendant, through appointed counsel, filed the instant amended postconviction petition alleging various claims of ineffective assistance of his trial counsel. Defendant asserted, in relevant part, trial counsel provided ineffective assistance when he failed to (1) introduce water bills in defendant's name "for service to an address that was not 905 Prestwick Point and that were not mailed to 905 Prestwick Point," and (2) call Aziz at trial and "adduce testimony beneficial to [d]efendant's theory of the case." Aziz's affidavit—filed April 5, 2017—was attached to defendant's amended petition and stated:

> "I owned the blue 1994 Chevy Blazer that was impounded by police on 3-23-16.
>
> I drove my blue 1994 Chevy Blazer to Lincoln Square Mall on 3-23-16.
>
> I owned the 905 Preswick house key and blue 1994 Chevy Blazer truck key that police took on 3-23-16.
>
> I lived at 905 Preswick since September 2015. [Defendant] never lived at 905 Preswick Champaign IL.

No Property at 905 Preswick besides 3 papers with [defendant's] name on it

belonged to [defendant]."

Postconviction counsel also attached copies of two water bills in defendant's name concerning

the final billing periods between February 3 and March 7, 2016, for service at 1305 Christopher

Circle.

¶ 29        On April 30, 2018, the State filed a motion to dismiss defendant's amended

postconviction petition arguing the amended petition failed to make a substantial showing of a

constitutional violation. The State alleged the claims contained in defendant's amended petition

(1) were forfeited as he failed to raise them on direct appeal and (2) failed to demonstrate his trial

counsel provided ineffective assistance.

¶ 30        On August 16, 2018, the trial court entered a written order granting the State's

motion to dismiss defendant's amended postconviction petition. The court found the amended

petition, submitted attachments, and supporting documents, "taken with the trial record, do not

raise any factual disputes that cannot be resolved from the record, and do not make a substantial

showing of a violation of [defendant's] rights under either the State or United State[s]

Constitution." The court also found "each of the issues [defendant] claims as a basis for

post-conviction relief were known to the defendant at the time and could have been raised on

direct appeal." The court stated further:

"Even if Aziz's testimony and the water bills were presented, the evidence

is not of such a nature that there is a reasonable basis to find that the outcome of

the trial would be changed. Much of the same evidence would be cumulative to

the testimony of Trisha Fitton, the defendant's girlfriend. Further, the State did

not have to prove that the defendant resided at the residence, only that he was in

actual or constructive possession of evidence connected to that residence. The

defendant was searched at his place of work and had the key to that residence on

his person. An earnings statement and prescription for the defendant were found

inside the residence, along with scales, inositol powder, baggies, [and] cocaine

residue."

¶ 31          This appeal followed.

¶ 32                              II. ANALYSIS

¶ 33          On appeal, defendant argues the trial court's dismissal was in error as his

amended postconviction petition made a substantial showing trial counsel provided ineffective

assistance by failing to (1) call Aziz as a witness and (2) introduce defendant's water bills into

evidence. In response, the State contends dismissal of defendant's amended petition was

appropriate as his claim regarding counsel's failure to call Aziz as a witness was procedurally

barred, and his petition failed to make a substantial showing of a constitutional violation.

¶ 34                      A. The Post-Conviction Hearing Act

¶ 35          The Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides criminal defendants a

manner by which they can assert their convictions resulted from a substantial denial of their

rights under the United States Constitution, the Illinois Constitution, or both. *People v. Guerrero*,

2012 IL 112020, ¶ 14, 963 N.E.2d 909. In a noncapital case, the Act contemplates three distinct

stages. At the first stage, a trial court will summarily dismiss a petition it finds to be frivolous or

patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). However, as in the present case,

if the court fails to take any action on the petition within 90 days of filing, it will automatically

advance to second-stage proceedings. *People v. Kuehner*, 2015 IL 117695, ¶ 19, 32 N.E.3d 655;

725 ILCS 5/122-2.1(a) (West 2016). If the petition advances to the second stage, counsel may be

appointed, the petition may be amended, and the State may move to dismiss or answer the petition. 725 ILCS 5/122-4, 122-5 (West 2016). At the second stage, the trial court tests the legal sufficiency of the petition in determining whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 245-46, 757 N.E.2d 442, 446 (2001). In making this determination, the court accepts all well-pleaded facts as true unless affirmatively refuted by the record. *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. The defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006).

¶ 36                                    B. Standard of Review

¶ 37          Defendant's amended postconviction petition was dismissed at the second stage of review. Our review of a second-stage dismissal is *de novo*. *Id.* We may affirm the trial court's dismissal on any grounds substantiated by the record. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 17, 964 N.E.2d 1139.

¶ 38                                         C. Forfeiture

¶ 39          A postconviction proceeding " 'is not a substitute for, or an addendum to, direct appeal.' " *People v. Rissley*, 206 Ill. 2d 403, 412, 795 N.E.2d 174, 178 (2003) (quoting *People v. Kokoraleis*, 159 Ill. 2d 325, 328, 637 N.E.2d 1015, 1017 (1994)). The scope of a postconviction proceeding is ordinarily limited to constitutional matters involved in the original proceedings that have not been, nor could have been, previously adjudicated. *People v. Blair*, 215 Ill. 2d 427, 447, 831 N.E.2d 604, 617 (2005). An issue previously adjudicated on direct appeal will be barred by the doctrine of *res judicata*, and an issue that could have been raised on direct appeal but was not will be considered forfeited. *People v. Ligon*, 239 Ill. 2d 94, 103, 940 N.E.2d 1067, 1073 (2010).

The doctrines of *res judicata* and forfeiture may be relaxed when one of the following three circumstances is present: (1) the facts relating to counsel's alleged ineffectiveness do not appear on the face of the original appellate record; (2) a defendant can establish appellate counsel was ineffective for failing to raise the issue on direct appeal; or (3) fundamental fairness so requires. *People v. Terry*, 2012 IL App (4th) 100205, ¶ 30, 965 N.E.2d 533.

¶ 40 Here, defendant's claim his trial counsel was ineffective for failing to call Aziz as a witness is based entirely upon facts contained in the common law record. "[I]n Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record." *People v. Veach*, 2017 IL 120649, ¶ 46, 89 N.E.3d 366. As the State points out, Aziz's affidavit—relied upon by defendant in his amended postconviction petition— is the very same affidavit filed during defendant's sentencing hearing in conjunction with defendant's motion for new trial. The claim could have been raised by defendant on direct appeal and as a result has been forfeited. *People v. Petrenko*, 237 Ill. 2d 490, 499, 931 N.E.2d 1198, 1204 (2010); *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007).

¶ 41                                      D. Ineffective Assistance

¶ 42 Forfeiture aside, we find defendant's petition was properly dismissed as it failed to make a substantial showing of a constitutional violation. Ineffective-assistance-of-counsel claims are subject to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, 1255 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687; *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163-64 (1999).

¶ 43        To satisfy the deficiency prong of *Strickland*, counsel's performance must be so

deficient that counsel was "not functioning as the 'counsel' guaranteed by the sixth amendment

[ (U.S. Const., amend.VI) ]." *People v. Easley*, 192 Ill. 2d 307, 317, 736 N.E.2d 975, 985 (2000).

"Decisions concerning which witnesses to call at trial and what evidence to present on

defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st)

092802, ¶ 79, 962 N.E.2d 528. "It is well established that these types of decisions are considered

matters of trial strategy and are generally immune from claims of ineffective assistance of

counsel." *Id.* "Trial counsel's performance cannot be considered deficient because of a failure to

present cumulative evidence." *People v. Dupree*, 2018 IL 122307, ¶ 51, 124 N.E.3d 908.

"Evidence is considered cumulative when it adds nothing to what was already before the jury."

*People v. Ortiz*, 235 Ill. 2d 319, 335, 919 N.E.2d 941, 950 (2009).

¶ 44        To satisfy the prejudice prong of *Strickland*, the defendant must demonstrate, but

for counsel's deficient performance, there is a reasonable probability the result of the proceeding

would have been different. *Strickland*, 466 U.S. at 687-88, 694; *People v. Houston*, 226 Ill. 2d

135, 144, 874 N.E.2d 23, 29 (2007). "[A] reasonable probability that the result would have been

different is a probability sufficient to undermine confidence in the outcome—or put another way,

that counsel's deficient performance rendered the result of the trial unreliable or fundamentally

unfair." *People v. Evans*, 209 Ill. 2d 194, 220, 808 N.E.2d 939, 953-54 (2004). Failure to satisfy

either prong defeats the claim. *Strickland*, 466 U.S. at 697; *People v. Coleman*, 183 Ill. 2d 366,

397, 701 N.E.2d 1063, 1079 (1998).

¶ 45        Defendant argues trial counsel provided ineffective assistance by failing to call

Aziz as a witness. A review of Aziz's affidavit reveals the information he would have offered

was merely cumulative of what was already presented to the jury. Detective Sumption testified

he recovered a key ring from defendant's pants pocket containing a house key, "a key fob for a vehicle, as well as ignition keys and door keys for a vehicle" at the time of defendant's arrest. Sumption explained the vehicle keys belonged to "a blue SUV," and he prepared a towing report for the vehicle. The towing report indicated the vehicle was a blue, 1994 Chevrolet Blazer and listed Aziz as its registered owner. Fitton confirmed the keys belonged to Aziz and testified he moved in with her at 905 Prestwick Point in September 2015. Fitton also testified defendant visited 905 Prestwick Point "once or twice every couple weeks," and Williams testified defendant lived with her at 1901 Joanne Lane until his arrest. Other than the prescription pamphlet and mail bearing defendant's name, Fitton testified the items found in the residence either belonged to her or Aziz. "Trial counsel's performance cannot be considered deficient because of a failure to present cumulative evidence." *Dupree*, 2018 IL 122307, ¶ 51. The jury was already well aware of the information contained in Aziz's affidavit, and it is clear Aziz's proposed testimony would have been unnecessarily cumulative, of little value, and certainly not enough to demonstrate a reasonable probability sufficient to undermine confidence in the outcome. See *Evans*, 209 Ill. 2d at 220.

¶ 46    Defendant next claims trial counsel provided ineffective assistance by failing to introduce defendant's water bills for service at 1305 Christopher Circle. Defendant asserts "[t]he water bills would have corroborated Williams's testimony that [defendant] lived with her somewhere other than 905 Prestwick [Point] on the incident date." Counsel, however, already presented witnesses at trial who testified defendant lived somewhere other than 905 Prestwick Point. The jury also heard from Officer Herrig, who testified he photographed two pieces of defendant's mail bearing the addresses 3605 Christopher Circle and 1305 Christopher Circle

during the execution of the search warrant. As the trial court stated in its August 2018 written order:

> "Even if *** the water bills were presented, the evidence is not of such a nature that there is a reasonable basis to find that the outcome of the trial would be changed. Much of the same evidence would be cumulative to the testimony of Trisha Fitton, the defendant's girlfriend. Further, the State did not have to prove that the defendant resided at the residence, only that he was in actual or constructive possession of evidence connected to that residence. The defendant was searched at his place of work and had the key to that residence on his person. An earnings statement and prescription for the defendant were found inside the residence, along with scales, inositol powder, baggies, [and] cocaine residue."

In light of all the evidence against defendant, we cannot say a reasonable probability exists the result of the proceedings would have been different had counsel introduced defendant's water bills at trial.

¶ 47                                      III. CONCLUSION

¶ 48          We affirm the trial court's judgment.

¶ 49          Affirmed.