NOTICE

Decision filed 08/30/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200320-U

NO. 5-20-0320

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Monroe County. |
| | ) | |
| v. | ) | No. 09-CF-50 |
| | ) | |
| CHRISTOPHER COLEMAN, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1 *Held*: We affirm the circuit court's denial of defendant's postconviction claim that he was denied due process at the third stage of the proceedings, where the court's finding that metadata attached to trial exhibits did not constitute extraneous information was not against the manifest weight of the evidence. We affirm the court's dismissal of defendant's postconviction claims of ineffective assistance of counsel at the second stage of the proceedings, where defendant failed to make a substantial showing that he was prejudiced by trial counsel's alleged deficient performance and by the jury's consideration of the metadata.

¶ 2 Following a jury trial in the circuit court of Monroe County, defendant, Christopher Coleman, was convicted of three counts of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and sentenced to natural life in prison. This court affirmed defendant's convictions on direct appeal (*People v. Coleman*, 2014 IL App (5th) 110274), and the Illinois Supreme Court denied defendant's petition for leave to appeal (*People v. Coleman*, No. 118848 (Ill. May 27, 2015)).

1

¶ 3    Defendant filed a petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)), which advanced to the second stage. Postconviction counsel filed an amended postconviction petition, claiming actual innocence as well as violations of defendant's constitutional rights to due process and effective assistance of counsel. The State filed a motion to dismiss, and defendant subsequently filed several *pro se* supplements to the amended petition. Following several hearings, the circuit court dismissed the amended petition and *pro se* supplements.

¶ 4    Defendant appeals, arguing that the circuit court erred by dismissing his amended postconviction petition and *pro se* supplements where he made a substantial showing that (1) his constitutional right to due process was violated when the jury considered prejudicial extraneous information, and (2) his constitutional right to effective assistance of counsel was violated when trial counsel failed to object to the extraneous information, failed to introduce fingerprint evidence, and failed to effectively challenge the State's DNA evidence. For the following reasons, we affirm.

¶ 5                           I. Background

¶ 6    Detailed facts underlying defendant's murder convictions were set forth in this court's opinion on direct appeal. *Coleman*, 2014 IL App (5th) 110274. We limit our recitation of the facts to those necessary for an adequate understanding of the case and resolution of the issues raised on appeal.[1]

---

[1]We agree with the State's observation that the statement of facts in defendant's *pro se* opening brief "is incomplete, one-sided, and argumentative, and includes information not in the record." Illinois Supreme Court Rule 341 (eff. Nov. 21, 2017) sets forth the mandatory requirements for briefs submitted on appeal, and the facts section of defendant's brief fails to comply with that rule. We caution that all parties, including *pro se* defendants, are required to follow the Illinois Supreme Court Rules governing appellate procedure, or risk forfeiture of the issues.

¶ 7     At approximately 5:45 a.m. on May 5, 2009, defendant left his home to go to the gym. At 6:43 a.m., defendant called his neighbor, a detective employed by the Columbia Police Department, and expressed concern that his wife, Sheri Coleman, did not answer the phone. Defendant previously reported to police that he received correspondence threatening his family due to his employment with Joyce Meyer Ministries (JMM). Police went to defendant's home and discovered an unlocked, open basement window. Police entered the home and observed disturbing messages written on the walls of the home in red spray paint. Police found defendant's wife and two sons dead on the second floor of the home.

¶ 8     When interviewed by police, defendant claimed Sheri was alive when he left for the gym. Defendant admitted that he and Sheri had marital issues, but he claimed they worked through the issues in counseling. Police learned that defendant was having an extramarital affair with a woman named Tara Lintz, who lived in Florida. After initially denying the affair, defendant admitted the affair but minimized the intensity of the affair. Police also learned that defendant's affair may have jeopardized his employment with JMM.

¶ 9     When Lintz was interviewed by police, she revealed that defendant planned to serve divorce papers on Sheri on May 5, 2009. Lintz advised that she and defendant planned to go on a cruise in June 2009 and planned to wed in January 2010. Lintz claimed that they began looking for homes in the St. Louis area, and that they discussed baby names.

¶ 10    Cybercrime investigators discovered that threatening emails defendant received were sent from his own computer. Investigators also discovered the word "opportunities" was consistently misspelled as "oppurtunities" in the threatening correspondence. Investigators found the same misspelling of the word in several documents on defendant's computer.

3

¶ 11    Medical reports indicated that defendant's family was dead before 5 a.m. The autopsy reports listed strangulation as the cause of death of all three family members. Police recovered DNA evidence from Sheri's fingernails and collected DNA samples from defendant.

¶ 12    On May 20, 2009, the State charged defendant by information with three counts of first-degree murder. Defendant obtained private counsel (trial counsel). Prior to trial, trial counsel filed numerous motions *in limine*, including a motion to bar evidence of sexually explicit photographs exchanged between defendant and Lintz that were seized from their computers and cell phones. The circuit court noted that police recovered numerous photographs but allowed only a limited number of photographs. The court also ordered the State to censor the breasts, buttocks, and genitalia depicted in the photographs.

¶ 13    In April 2011, the matter proceeded to a jury trial. At trial, the State presented testimony from multiple witnesses, along with 99 exhibits. The State presented evidence consistent with the police investigation outlined above. The State presented testimony from two paramedics, which demonstrated that rigor mortis was present at approximately 7:05 a.m. on May 5, 2009. The State also presented testimony from two forensic pathologists, which demonstrated that defendant's family was dead before 5 a.m. on May 5, 2009. The State presented testimony from Lintz, which indicated that the affair began in November 2008 and became sexual in December 2008.

¶ 14    The State presented testimony from Michael Brown, a forensic scientist, which demonstrated that the fingernail scrapings collected from Sheri Coleman contained a partial male DNA profile and neither defendant nor his two sons could be excluded as a source of the DNA. However, Brown cautioned the jury "not to read too much into that" because there was no evidence of blood under Sheri's fingernails. Brown explained that the DNA found "may have just been skin cells" and that it was "possible that this profile originated from just casual contact between two

4

people living together in the same house." On cross-examination, Brown agreed that it was common to find DNA of family members on fingernail scrapings taken from other family members. When trial counsel asked Brown if the DNA he examined came from "an outside source," Brown testified that it was consistent with having come from a family member but that it was "possible that someone in the general population has a same genetic marker as some of those I've identified." While Brown explained that he did not find any markers that could not have come from one of the family members, he agreed that the DNA could have come from an outsider "because we all share some of these common markers."

¶ 15    The State called Micheal Grist, a crime scene investigator employed by the Illinois State Police, who testified that he took photographs and collected evidence at the crime scene, including latent fingerprints. Grist testified that he observed no signs of forced entry into the home. Grist also testified that none of the first-floor windows were locked, and the basement window was open. On cross-examination, Grist testified that he found nine latent fingerprints on the basement window. When trial counsel asked Grist if the fingerprints belonged to defendant, Grist responded, "I don't know who they belonged to, that's up to the scientists to determine who the [*sic*] belonged to." Trial counsel then asked, "You're not saying that any of those fingerprints belonged to [defendant]?" Grist responded, "No, sir." Trial counsel revisited the subject once more, asking, "And you're not telling this jury that those were [defendant's] prints?" Grist responded, "I don't know who they belonged to, sir." Trial counsel concluded cross-examination with the following question: "And, sir, just so that there's no confusion, all of these things you photographed and all the evidence you collected, you're not saying any of that connects [defendant] to the homicide, are you?" In response, Grist stated, "No, sir."

5

¶ 16    The State presented testimony from a testing lab manager for Mi Windows and Doors in Pennsylvania, the company that manufactured the Colemans' basement window, which demonstrated that the Colemans' window showed no damage or signs of being forcibly opened. The testing lab manager clarified that there were no signs the window was opened forcibly from the outside while locked.

¶ 17    In addition, the State presented testimony from an officer who analyzed the computers and phones recovered from defendant and Lintz, which demonstrated that the officer found "several hundred" explicit photographs. At trial counsel's request, the circuit court revisited its ruling on the motion to bar the sexually explicit photographs and allowed only four of the photographs (People's Exhibits 26 through 29).

¶ 18    Exhibits 26 through 29 were 8-inch by 10-inch enlargements of four sexually explicit photographs exchanged between defendant and Lintz. Exhibits 26 and 27 were photographs of defendant, dated April 23, 2009, standing in front of a mirror with his genitalia exposed. Exhibits 28 and 29 were undated photographs of Lintz standing in front of a mirror with her breasts and buttocks exposed. The breasts, buttocks, and genitalia depicted in Exhibits 26 through 29 were censored in accordance with a prior order of the circuit court. The four censored photographs were affixed to the front of foam boards when admitted into evidence at trial.

¶ 19    Attached to the back of each of the four censored photographs were two separate documents, which contained thumbnail photographs and file information, or metadata,[2] pertaining to each photograph. The thumbnail photographs, which were smaller versions of the enlarged

---

[2]Throughout the postconviction proceedings the parties used the terms "file information," "metadata," "EXIF data," "file system data," and "thumbnail information" when referring to the information contained on the documents attached to the back of Exhibits 26 through 29. We refer to the information as "metadata" in this order, as that is the term most commonly used by the circuit court and by the parties in the briefs filed on appeal.

photographs, were not censored in accordance with the circuit court's prior order. The metadata contained information indicating the date the photographs were created, modified, and accessed. Relevant here, the documents attached to Exhibit 27 contained differing dates, in that one document indicated the photograph was created on April 23, 2009, modified on April 23, 2009, and accessed on April 22, 2009, while the other document indicated the photograph was created on October 21, 2008, modified on May 4, 2009, and accessed on May 4, 2009.[3] Trial counsel did not specifically object to the documents attached to the back of Exhibits 26 through 29.

¶ 20    After the State rested, the circuit court denied defendant's motion for directed verdict. The defense presented the testimony of two witnesses. Trial counsel did not call an expert witness to testify regarding the fingerprint evidence found at the scene, nor did trial counsel call an expert witness to testify regarding the DNA evidence.

¶ 21    During closing arguments, trial counsel argued that the State presented no physical evidence demonstrating that defendant committed the murders. Trial counsel noted that there was no "evidence of any blood" or "any fingerprint incriminating him." Trial counsel argued that the testimonies of the forensic pathologists showed that the time of death was merely an estimate and that it was possible the family was still alive when defendant left for the gym. According to trial counsel, the State failed to present evidence demonstrating that police conducted a thorough examination of the evidence collected in the case. Trial counsel argued that the State failed to elicit testimony regarding the fingerprints found on the basement window, and that trial counsel

---

[3]One of the documents attached to Exhibit 26 indicated that the photograph was created on April 23, 2009, modified on April 23, 2009, and accessed on April 22, 2009, while the other document indicated the date and time information was not available. One of the documents attached to Exhibit 28 indicated that the photograph was created on January 28, 2009, modified on November 26, 2008, and accessed on January 28, 2009, while the other document indicated the date and time information was not available. One of the documents attached to Exhibit 29 indicated that the photograph was created on January 28, 2009, modified on January 28, 2009, and accessed on March 23, 2009, while the other document indicated the date and time information was not available.

"brought it out." Trial counsel asserted that the State would have presented evidence showing the fingerprints matched defendant if such evidence existed. Trial counsel concluded by asking the jury to consider why the State failed to produce certain evidence at trial.

¶ 22 Many of the exhibits were sent back to the jury during deliberations, including Exhibits 26 through 29. Trial counsel generally objected when Exhibits 26 through 29 were sent back to the jury.

¶ 23 The jury deliberated for approximately two days. During that time, the jury sent a note to the circuit court requesting a magnifying glass. The court complied with the request without objection from either party. The jury later sent a note to the court stating, "We are a hung jury." The court, noting that the jury deliberated for less than five hours, directed the jury to continue deliberations over trial counsel's objection. The jury also requested the transcript of the testimonies of the two pathologists regarding the victims' times of death, which the court allowed without objection from either party. Thereafter, the jury returned verdicts finding defendant guilty of three counts of first-degree murder. The court subsequently sentenced defendant to three concurrent life sentences.

¶ 24 On June 3, 2011, defendant filed a motion for new trial. Defendant's motion included, *inter alia*, the following allegation:

> "Reversible error was committed when jurors considered extra-judicial evidence. Two jurors gave media interview stating that the jury finally voted for conviction after examining with a magnifying glass a time stamped on the back of photo exhibits exchanged between Tara Linz [*sic*] and the defendant, which the jurors stated that proved defendant and Tara were lying. The juror also indicated that this was the issue which ultimately swayed them to conviction after being deadlocked seven to five for conviction after fifteen hours of deliberation and more than two days and after sending a note to the Judge that they were deadlocked."

8

On June 27, 2011, following a hearing,[4] the circuit court denied defendant's motion for new trial, and defendant filed a notice of appeal. Counsel was appointed to represent defendant on appeal (appellate counsel).

¶ 25 On direct appeal, appellate counsel raised seven issues, including an issue regarding the sexually explicit photographs and uncensored thumbnail photographs contained in Exhibits 26 through 29. Appellate counsel did not raise an issue regarding the jurors' consideration of the metadata on the back of the photograph exhibits, nor did appellate counsel assert that defendant received ineffective assistance of counsel at trial. In addressing the uncensored thumbnail photographs, this court concluded that defendant forfeited the issue due to trial counsel's failure to object to the uncensored photographs at trial, and that the presence of the two small, uncensored photographs did not amount to plain error where the evidence was not closely balanced. *Coleman*, 2014 IL App (5th) 110274, ¶¶ 127-28. In so concluding, this court noted there was overwhelming circumstantial evidence against defendant, where "the evidence established that the victims were all dead before defendant left the house, there was no evidence that anyone else entered the house, the threatening emails were sent from defendant's own Dell computer, and defendant had a clear motive for such heinous crimes." *Id.* ¶ 128. After this court affirmed defendant's convictions, the Illinois Supreme Court denied defendant's petition for leave to appeal on May 27, 2015. *Coleman*, No. 118848.

¶ 26 On February 23, 2016, defendant filed a *pro se* petition under the Post-Conviction Hearing Act, raising 20 claims. The circuit court entered a written order on March 10, 2016, finding that the petition stated the gist of a constitutional claim. The court acknowledged that "some of the claims fail for various reasons" but moved the entire petition to the second stage pursuant to *People*

---

[4]A transcript of the hearing is not included in the record on appeal.

9

*v. Rivera*, 198 Ill. 2d 364 (2001). The court appointed counsel to represent defendant at the second stage of the proceedings (postconviction counsel).

¶ 27    On April 3, 2018, postconviction counsel filed an amended postconviction petition, claiming actual innocence as well as violations of defendant's constitutional rights to due process and effective assistance of counsel. The amended petition first alleged that defendant's right to due process was violated when the jury considered the documents affixed to the back of Exhibits 26 through 29, which contained the uncensored, sexually explicit thumbnail photographs and metadata. Defendant asserted that the jury conducted a "private investigation" of the unadmitted photographs and metadata after the circuit court granted the jury's request for a magnifying glass during deliberations. Defendant further asserted that two recorded posttrial statements by jurors provided an account of the private investigation.

¶ 28    In support, defendant attached to the amended petition a thumb drive containing a copy of an episode of the television show "48 Hours," wherein four unnamed jury members discussed defendant's trial. One of the jurors stated that the jury was initially deadlocked due to the lack of physical evidence in the case. The juror explained, however, that the jury discovered the thumbnail photographs and metadata containing the dates the photographs were created, which conflicted with the defense's timeline of the affair. According to the jury members, this discovery convinced the jury that the defense was lying and defendant was guilty. Defendant also attached to the amended petition an excerpt from a "Republic-Times" news article, dated July 7, 2017, which read, in pertinent part:

> "One juror, Kimberly Ferrari, later told the Pinckneyville Press from the confines of her Perry County home that the jury was deadlocked in the early hours of deliberation due to a lack of physical evidence presented in the case.
>
> 'It was like a piece was missing,' she said.

10

This juror said the turning point in deliberations was when they noticed some of the dates listed on romantic and sexually explicit photographs shared between [defendant] and his Florida Mistress, Tara Lintz, indicated they had been taken in October 2008—at least a month or more before Lintz had testified the affair started.

Ferrari said this caused jurors to lose all trust in the defense, and the tide turned toward a unanimous guilty verdict."

Relying on the 48 Hours episode and Republic-Times article, defendant claimed that the jury convicted him based on unadmitted evidence that lacked proper foundation. Thus, he argued that the publication of the uncensored thumbnail photographs and metadata prejudiced him and created a process by which the jury conducted their own investigation.

¶ 29    The amended petition next alleged that trial counsel provided ineffective assistance by failing to object to the uncensored thumbnail photographs and metadata, failing to introduce exculpatory fingerprint evidence, and failing to confront or offer rebuttal expert testimony regarding the State's DNA evidence.[5] Defendant asserted that "[c]umulatively these deficiencies denied him the effective assistance of counsel."

¶ 30    Regarding the metadata, defendant alleged that trial counsel "should have reviewed all published exhibits before they were brought to the attention of the jury" and raised specific objections. Defendant further asserted that trial counsel "should have inquired into the validity of the verdict by reviewing the aforementioned public interviews." Defendant claimed that because "no such inquiry was made, the arguments raised in this Petition were not properly brought before other reviewing courts."

---

[5]Defendant additionally claimed that trial counsel provided ineffective assistance by failing to introduce evidence that Joyce Meyer and her son were both divorced, which contradicted the State's theory of motive, and evidence that shoe impressions found beneath the basement window could not be attributed to defendant, which could have created reasonable doubt in the minds of the jurors. However, defendant does not raise issues regarding the circuit court's dismissal of these claims on appeal.

11

¶ 31    Regarding the fingerprint evidence, defendant alleged that trial counsel was ineffective for failing to present evidence to contradict the State's theory that he staged a break-in by opening a basement window while he was inside the home. Defendant alleged that law enforcement could not match defendant to prints lifted from the open basement window. In support, defendant attached to the amended petition copies of the Illinois State Police crime lab reports, which indicated the finger and palm prints did not match defendant. Defendant also relied on the trial testimony of Michael Grist that defendant " 'was eliminated as the source of the prints.' "

¶ 32    Defendant further alleged that law enforcement discovered a DVR faceplate "on the Jefferson Barracks Bridge approximately 4.7 miles" from defendant's home, which resembled the DVR surveillance system missing from defendant's home. Defendant asserted that the attached Illinois State Police crime lab reports further demonstrated that a fingerprint taken from the DVR faceplate did not match defendant. Defendant alleged that "[t]his evidence was never testified to in open court and counsel never introduced it."

¶ 33    Lastly, defendant alleged that the State presented evidence demonstrating defendant was a partial DNA match to DNA samples collected from Sheri Coleman's fingernails. Defendant argued that trial counsel failed to illustrate to the jury, either through rebuttal expert testimony or proper cross-examination, that the State's evidence of "partial match" was "far more exculpatory and inculpatory." Defendant noted the State's DNA experts testified that there was a one in three chance the DNA collected from Sheri's fingernails matched defendant "as the profile was consistent with having come from family members." Defendant maintained that such testimony misrepresented "the conclusions that can be drawn from a partial profile" and failed "to acknowledge the degree to which someone in the general population has the same genetic markers as those identified." Defendant alleged that "[h]ad [trial] counsel thoroughly investigated, using

12

expert testimony or proper cross-examination expounded to the jury, the theoretical possibilities of the outcome would have looked much different." According to defendant, trial counsel should have demonstrated the ratio was "not 1 of 3 potential people but any 1 of millions."

¶ 34 In support, defendant attached to the amended petition Illinois State Police DNA reports, as well as "DNA Data and Research." Defendant also noted the jurors stated in the 48 Hours episode that no other person's DNA was present at the crime scene. Accordingly, defendant claimed the "lack of adversarial process and ineffectiveness of defense counsel, combined with the State's closing arguments, made for a fact or condition in deliberations that was not accurate and prejudiced [defendant]." Defendant asserted that "[c]umulatively, the deficiencies concerning the lack of action on counsel's part so prejudiced the defendant as to deprive him of a fair trial." According to defendant, the alleged deficiencies, "taken into consideration with the knowledge that the jury was at one time deadlocked," created "a reasonable probability that, absent errors, the fact finder would have had a reasonable doubt respecting guilt."

¶ 35 Defendant concluded by arguing that his constitutional rights to effective assistance of counsel, to confront witnesses against him, and a fair trial were violated. Thus, defendant requested an evidentiary hearing on the claims raised in his petition.

¶ 36 On December 13, 2018, following several extensions of time, the State filed a motion to dismiss defendant's amended postconviction petition. The State first noted that defendant failed to support the due process claim with affidavits from jurors. According to the State, the unsworn statements jurors made in a television program or newspaper article were not substitutes for affidavits and were insufficient to show a substantial violation of defendant's right to due process.

¶ 37 The State also argued that the supporting allegations and juror statements were insufficient to warrant an evidentiary hearing because the jurors' statements about the effect the extraneous

13

information had on the jury were inadmissible under Illinois Rule of Evidence 606(b) (eff. Jan. 1, 2011), *People v. Holmes*, 69 Ill. 2d 507 (1978), and *People v. Hobley*, 182 Ill. 2d 404 (1998). The State acknowledged the jurors could testify that they considered the metadata but claimed an evidentiary hearing was unnecessary because Exhibits 26 through 29 were part of the record and, thus, the court could evaluate the information that the jury considered. The State argued that, without considering the jurors' statements regarding the effect the information had upon the verdict, the dates contained in the metadata were not prejudicial because the dates did not relate to any issue in the case. The State asserted that the evidence against defendant was overwhelming, and that the metadata did not create a probability of prejudice that defendant's due process rights were violated.

¶ 38    Regarding defendant's claims of ineffective assistance of trial counsel, the State argued that defendant raised issues pertaining to trial strategy and that trial counsel's performance did not prejudice defendant where the evidence against defendant was overwhelming. In addressing defendant's claim that trial counsel was ineffective for failing to bring the juror interviews to the attention of the circuit court, the State asserted that there was "no showing of when trial counsel learned of these interviews, but these interviews were outside the record and could not have been raised on direct appeal because of that." The State further asserted that "counsel could not have raised the issue of their own ineffectiveness in the trial court and that claim is now being raised in the appropriate legal proceeding."

¶ 39    As to the fingerprint evidence, the State noted that trial counsel elicited testimony from Grist on cross-examination, which demonstrated that the fingerprints found on the basement window did not match defendant. The State also noted that trial counsel reiterated the State's failure to show that the fingerprints matched defendant during closing argument. The State did not

14

address defendant's argument regarding the fingerprints on the DVR faceplate but urged that trial counsel's decision not to introduce additional fingerprint evidence was neither unreasonable nor prejudicial. As to the DNA evidence, the State noted trial counsel adequately pointed out the limitations of the DNA evidence to the jury during trial and that counsel's decision "not to delve further into the DNA evidence" was reasonable trial strategy. Thus, in addition to defendant's failure to establish prejudice due to the overwhelming evidence, the State claimed trial counsel's handling of the fingerprint and DNA evidence was reasonable trial strategy.

¶ 40    On March 27, 2019, the circuit court held a hearing on the State's motion to dismiss, where the parties presented arguments consistent with the prior filings. At the hearing, the parties and the circuit court expressed disagreement on whether the court could consider the statements that jurors made in the 48 Hours episode and Republic-Times article. The State agreed the metadata was extraneous but maintained that the metadata was not prejudicial because the date the affair began was never an issue in the case. The State further maintained that the law prohibited the court from considering the jurors' statements that the metadata convinced the jury the defense was lying and defendant was guilty. The State claimed the metadata was attached to the exhibits to assist the officer who was testifying at trial in determining where each photograph came from. In response to an inquiry by the court, the State confirmed that two documents were taped behind the photograph exhibits, which contained the metadata. When the court asked if the documents were taped behind the photograph exhibits when tendered to the court and the court admitted the exhibits into evidence, the State responded, "I believe so." The State indicated that it "could clarify the issue pretty quickly on that point" at an evidentiary hearing.

15

¶ 41 Postconviction counsel disagreed with the State's interpretation of the law, arguing that the circuit court could consider the jurors' statements as an exception to the general rule. Postconviction counsel asserted:

> "This is information that was—no foundation was laid, no admissibility was allowed for. It went back, and we actually have statements that it was the deciding factor in the case.
> And so that's why I think an exception like this is carved out so that the court system and the concept of due process can have assurance that extraneous, inadmissible information isn't what jurors are hanging their hats on. That's why this exception exists, and I think that's why it's appropriate."

¶ 42 After considering the parties' arguments, the circuit court concluded that an evidentiary hearing was necessary for the limited purpose of determining whether the metadata was on the back of the photographs during the trial or whether it was improperly added before the photographs went back with the jury for deliberations. The court went on to state that if it found extraneous evidence went to the jury, it could consider "what jurors have said as to how they responded to this extraneous evidence." The court took the remaining claims raised in the amended petition under advisement.

¶ 43 On April 11, 2019, the State filed a supplement to the motion to dismiss. Contrary to its previous position, the State alleged that the thumbnail photographs and metadata were not extraneous because both were affixed to the exhibits when the exhibits were admitted into evidence at trial.

¶ 44 On April 16, 2019, the circuit court held an evidentiary hearing. At the outset of the hearing, the court clarified that it previously granted the State's request to offer witness testimony on the limited issue relating to the thumbnail photographs and metadata. The court explained that it ordinarily would not consider evidence at the second stage, and that the hearing "with respect to this particular issue is probably more a stage three proceeding in which I am taking evidence in

16

considering the merits of the Complaint on this issue as raised by the Defense." The State then called various witnesses to testify at the hearing. The testimony generally established that the documents containing the thumbnail photographs and metadata were affixed to the back of Exhibits 26 through 29 when the exhibits were admitted into evidence at trial. The testimony demonstrated that the documents were included to assist the officer testifying at trial in determining the origin of each photograph. Following the testimony of the State's last witness, the circuit court asked if the defense planned to call any witnesses in rebuttal and postconviction counsel responded, "Not at this stage of the proceeding, your Honor."

¶ 45 The State acknowledged that it "treated the material as extraneous" in the original motion to dismiss but argued that the material was not extraneous, where the testimony established that the "information was on there" at trial and "was part of the exhibit." The State noted that trial counsel may have been ineffective in permitting the metadata "to be back there," but that the caselaw regarding extraneous information did not apply because the metadata was not extraneous. The State noted that, even if the information was extraneous, the court could not consider the jurors' statements regarding the effect the information had on the jury. The State further argued that the information was not prejudicial because the metadata did not relate to any issue in the case.

¶ 46 Postconviction counsel argued that the information attached to the exhibits was extraneous. Postconviction counsel also noted that the recorded statements of the jurors indicated the jury was deadlocked before discovering the metadata. Postconviction counsel additionally argued that the timeline of the affair and defendant's credibility regarding the affair were issues in the case. Thus, postconviction counsel argued that the amended petition demonstrated prejudice. Thus, postconviction counsel requested that the circuit court deny the motion to dismiss.

17

¶ 47    After considering the parties' arguments, the circuit court noted that there were two separate questions: (1) whether the thumbnail photographs and metadata were prejudicial and reached "the jury in some extraneous manner," and (2) whether trial counsel was ineffective by failing to object to the thumbnail photographs and metadata. The court concluded that the metadata and thumbnail photographs did not go "back to the jury improperly" and were not extraneous because both were on the exhibits admitted into evidence at trial. The court stated, "So with respect to that question, I'm going to rule in favor of the Motion to Dismiss."

¶ 48    The circuit court then allowed the parties to "reargue" the claims that trial counsel was ineffective. After considering arguments, the court stated that it would hold "an evidentiary hearing, a third-stage hearing," on defendant's claim that trial counsel was ineffective for failing to object to the metadata and for failing to develop the fingerprint evidence. The court clarified that "those two issues" would "move to a stage-three hearing." The court stated that it could not consider "the jurors' explanation of how they reached their verdict based on their examination of the metadata" because the information was not extraneous, but it would allow defendant to make an offer of proof "in that regard or to give me some further evidence—or further caselaw in that regard." The court granted the State's motion to dismiss the claim that trial counsel was ineffective regarding the DNA evidence, finding that trial counsel "did a sufficient job explaining the weaknesses of the DNA evidence." The court did not enter a written order setting forth its rulings.

¶ 49    On September 23, 2019, defendant filed a motion to proceed *pro se*. Defendant alleged in the motion that he notified the circuit court of his "disapproval" of postconviction counsel's representation on multiple occasions during the pendency of the case.

¶ 50    On November 6, 2019, defendant filed a *pro se* document titled "Supplemental Filing Regarding Affidavits." Defendant alleged that postconviction counsel was unable to obtain

18

affidavits from the jurors or trial counsel in support of defendant's claims. Defendant further alleged that postconviction counsel advised him that the 48 Hours episode and newspaper articles containing the jurors' statements were sufficient to support the postconviction petition. Defendant alleged that he personally attempted to obtain affidavits from the jurors but was unsuccessful.

¶ 51 On November 18, 2019, defendant filed a *pro se* letter to the circuit clerk requesting guidance on the procedure for issuing subpoenas to witnesses to testify at the third-stage hearing. Defendant acknowledged that the circuit court had not set a date for the hearing, but indicated his belief that the hearing would happen "in the near future."

¶ 52 Also, on November 18, 2019, defendant filed a 115-page *pro se* supplemental filing to his amended petition, along with an additional 7-page supplemental filing to his amended petition. Defendant essentially repeated the claims raised in his amended postconviction petition. Defendant also asserted that the jury's consideration of the thumbnail photographs and metadata amounted to plain error, that the error was not harmless, and that the error tipped the scales of justice because of the lack of physical evidence presented at trial. Defendant reiterated his claims of ineffective assistance of counsel, asserting that trial counsel's errors resulted in prejudice because the evidence was closely balanced. Lastly, defendant reasserted his claim of actual innocence. In the seven-page supplement, defendant argued that trial counsel did object to Exhibits 26 through 29 "inclusively." Defendant also reiterated his arguments that the jury's consideration of the thumbnail photographs and metadata resulted in prejudice.

¶ 53 On November 25, 2019, defendant filed a *pro se* motion for decision on the issue of unadmitted evidence. Defendant indicated that he did not waive his right to an evidentiary hearing but "because of the unique circumstances in which this Post Conviction relief process has proceeded, that an evidentiary hearing is not required." Defendant requested that the circuit court

either reverse and remand for a new trial due to the violation of his right to due process or set the matter for a third-stage evidentiary hearing.

¶ 54    On February 6, 2020, defendant filed a *pro se* motion to correct and complete postconviction process. Defendant asserted that the circuit court previously indicated that it would hold a third-stage evidentiary hearing on several issues raised in the amended petition. Defendant requested that the court set the matter for hearing.

¶ 55    On July 2, 2020, the circuit court held a hearing via Zoom. At the hearing, the court allowed defendant to proceed *pro se* but appointed postconviction counsel as standby counsel. The court indicated that defendant could file an amended *pro se* petition after he reviewed the case file. The court noted that, at the previous hearing, it found the exhibits with the thumbnail photographs and metadata went back to the jury on the foam boards admitted into evidence and, thus, did not constitute improper information "getting to the jury." The court explained that defendant's claim of actual innocence and defendant's claims of ineffective assistance of counsel remained.

¶ 56    The circuit court advised defendant that he would have the opportunity to present evidence on the remaining claims if the petition advanced to a third-stage hearing. Defendant claimed that he found two expert witnesses to testify in support of the claims raised in his petition. The State indicated that it would call various witnesses to testify at the hearing. The court then stated:

> "All right. I have not—I think it's a close call on the issue of these—these ineffective assistance of counsel claims. I'm going to review the evidence and—and the arguments. I reread the arguments earlier. They were advanced in that regard, and what I'd like to do is to reset this for a hearing in the next ten days where you get the benefit of my—of my ruling on the Motion to Dismiss on the remaining issues and on actual innocence.
> And in the meantime, [defendant], you could contact your experts—proposed experts, find out if you want to go forward with them, if you get the chance, and what kind of timeframe they would be looking at to be available, okay."

¶ 57    The State then sought clarification on the circuit court's April 16, 2019, ruling. The State believed the court previously determined that trial counsel was not ineffective regarding the DNA evidence. The court responded, "That was my initial take then, and—but I have not entered a formal written—written ruling on that, and we will get that before or at the next hearing."

¶ 58    On July 16, 2020, the circuit court held a hearing via Zoom where media was present. At the hearing, the court ruled that defendant's remaining claims did not justify a third-stage hearing. The court stated that it held "a third-stage hearing on the issues resolving—or relating to the publication of certain evidence to the jury and related ineffective assistance of counsel claim not to object to that evidence going in." The court concluded that "the way the evidence was handled does not justify setting aside a verdict or granting any further relief." The court noted that the record was "pretty clear on those issues, and it boils down to trial strategy of Counsel." The court clarified that the issues raised "with respect to ineffective assistance of counsel that have not already been rolled into the stage-three hearing on the photographic evidence and metadata, I've concluded that there's not enough in those allegations to justify a stage-three hearing." The court also found that defendant failed to support the claim of actual innocence with the necessary affidavits. Thus, the court granted the State's motion to dismiss the remaining claims in defendant's amended petition and supplemental filings.

¶ 59    On August 3, 2020, defendant filed a *pro se* motion to stay final judgment order pending review of discovery. Defendant alleged that the circuit court allowed him to proceed *pro se* on July 2, 2020, and directed postconviction counsel to supply defendant with discovery on July 16, 2020. Defendant alleged that he discovered, by "divine opportunity," that Todd Thorne of Todd A. Thorne & Associates was previously hired by trial counsel concerning the fingerprint evidence. According to defendant, Thorne was prepared to testify that the fingerprints located on the DVR

21

faceplate did not match defendant. Thus, defendant requested that the court stay its final ruling and allow defendant to review discovery.

¶ 60　Also on August 3, 2020, defendant filed a *pro se* objection to the hearing regarding the unadmitted evidence issue. Defendant asserted that the circuit court failed to address the issue of prejudice at any hearing held on the amended postconviction petition. Thus, defendant disagreed with the court's prior statement that a third-stage evidentiary hearing was held on the due process claim.

¶ 61　On September 8, 2020, the circuit court entered two written orders. In the first order, the court denied defendant's remaining motions. In the second order, the court dismissed defendant's amended postconviction petition and *pro se* supplements. In addressing defendant's due process claim, the court found that the thumbnail photographs and metadata were not extraneous because the information was not found as a result of an outside investigation conducted by the jurors. Rather, the court determined that "the material was attached to exhibits at that time they were admitted into evidence and, thus, had been properly submitted to the jury." Accordingly, the court concluded that the effect the "material had on the deliberations cannot then be considered." The court further noted that "[n]either the metadata nor the thumbnail photos are inherently prejudicial," given that defendant's affair was not an issue in the case, nor was the date the affair commenced. The court concluded that the metadata and thumbnail photographs "were not prejudicial, particularly in light of the overwhelming evidence of guilt that was proven at trial." Despite this, the court noted that it conducted an evidentiary hearing due to concern "that the [metadata] and the thumbnail photos on the back of the exhibits might have been part of a prosecutorial or law enforcement scheme to improperly put these materials in front of the jury to evade the trial court's ruling, and to permit the defense to present evidence on this claim." The

22

court noted that, following the hearing, it concluded that "no nefarious reasons caused the material to be attached to the photo exhibits." The court also dismissed defendant's claim of actual innocence, finding that he failed to support the claim with any new evidence.

¶ 62　Regarding defendant's claims of ineffective assistance of trial counsel, the circuit court found defendant was not prejudiced by trial counsel's failure to object to the thumbnail photographs or metadata. The court also found that trial counsel's decisions regarding the questioning of witnesses were matters of trial strategy and were not objectively unreasonable. The court next found trial counsel's handling of the fingerprint evidence was neither unreasonable trial strategy nor prejudicial. The court further found that trial counsel was not ineffective in handling the DNA evidence, given the strong circumstantial evidence against defendant.

¶ 63　Accordingly, the circuit court concluded that defendant failed to show a substantial deprivation of his rights occurred at trial. The court found the evidence of defendant's guilt overwhelming. Thus, the court dismissed defendant's amended postconviction petition and the *pro se* supplements.

¶ 64　On October 5, 2020, defendant filed a timely *pro se* notice of appeal from the circuit court's September 8, 2020, orders "denying Defendant's 'remaining motions,' " which requested an order " 'TO STAY FINAL JUDGMENT ORDER PENDING REVIEW OF DISCOVERY' (July 28, 2020)," and "dismissing Defendant's amended postconviction petition and his *pro se* supplements. (OPINION AND ORDER)."

¶ 65　　　　　　　　　　　　　　II. Analysis

¶ 66　On appeal, defendant argues that the circuit court erred by dismissing his amended postconviction petition and that he "is entitled to an evidentiary hearing and/or a new trial based on a substantial deprivation of his constitutional rights." Defendant argues that he made a

23

substantial showing that his constitutional rights to due process and effective assistance of counsel were violated at trial.[6] Before addressing defendant's specific arguments, we find it useful to review the general legal principles that govern postconviction proceedings.

¶ 67    The Post-Conviction Hearing Act provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). "To be entitled to postconviction relief, a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *Id.* A postconviction proceeding does not substitute for a direct appeal but instead "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42.

¶ 68    Proceedings under the Post-Conviction Hearing Act are divided into three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court may dismiss a postconviction petition that is "frivolous or *** patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). If the circuit court does not dismiss the petition at the first stage, it advances to the second stage where the court may appoint counsel to represent the defendant. *Id.* § 122-2.1(b); *People v. Bailey*, 2017 IL 121450, ¶ 18. At the second stage, the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. Such a showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Id.* ¶ 35. The trial court does not engage in fact-finding or credibility determinations at this stage; rather, all well-pleaded facts not positively rebutted by the original

---

[6]Defendant does not argue that the circuit court erred by dismissing his claim of actual innocence on appeal; thus, we will not consider that issue on appeal.

trial record are taken as true. *Id*. Also, the State may file a motion to dismiss or answer the petition. 725 ILCS 5/122-5 (West 2020). "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)). If the petition fails to make a substantial showing of a constitutional violation, it is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). "If not dismissed, however, the petition advances to the third stage, where the circuit court conducts an evidentiary hearing before deciding whether to grant relief." *Bailey*, 2017 IL 121450, ¶ 18. At the third stage, the court functions as the fact finder by determining witness credibility and resolving conflicts in the evidence. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 69     In the present case, defendant's postconviction petition advanced to the second stage, and postconviction counsel filed an amended petition on defendant's behalf. After the State moved to dismiss defendant's amended petition, the circuit court held a hearing. Following the hearing, the court concluded that an evidentiary hearing was necessary to determine whether the metadata was on the back of the photographs during the trial, or whether it was improperly added before the photographs went back with the jury for deliberations. The court held an evidentiary hearing where the State presented evidence on this limited issue. After the State presented evidence on the limited issue, the court found the metadata was not extraneous and allowed the parties to argue the other claims raised in the amended petition. Thereafter, the court issued an oral ruling stating that it granted the State's motion to dismiss the due process claim and the ineffective assistance claims pertaining to the DNA evidence.

¶ 70     While the circuit court subsequently indicated that it held, or would hold, a third-stage evidentiary hearing on certain claims at several points during the course of the proceedings, it appears from the record that the court did not hold a third-stage evidentiary hearing on any of the

25

remaining ineffective assistance of counsel claims. Defendant does not raise a specific issue on appeal regarding the procedure followed by the court. Based on our review of the record, it appears that the court dismissed defendant's due process claim at the third stage of the proceedings and dismissed the remaining claims at the second stage of the proceedings. Thus, we first consider whether the court erred by denying defendant's due process claim at the third stage of the proceedings.

¶ 71                                    A. Due Process

¶ 72    Defendant first argues that he made a substantial showing of a violation of his right to due process. Specifically, he argues that he was denied due process when the jury considered the metadata affixed to the back of Exhibits 26 through 29 in rendering a guilty verdict. Defendant asserts that the jury's consideration of the metadata prejudiced him and denied him a fair trial. In response, the State argues that defendant's argument regarding the metadata is forfeited. Alternatively, the State argues that the circuit court properly denied the claim.

¶ 73    We first consider the State's argument that defendant forfeited review of his claim regarding the metadata. "The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22. Any issues "that could have been raised on direct appeal, but were not, are forfeited." *Id*. (citing *People v. Ligon*, 239 Ill. 2d 94, 103 (2010)).

¶ 74    In the present case, defendant argues that his right to due process was violated when the jury considered the metadata, which he claims was improperly affixed to the back of Exhibits 26 through 29. As the State correctly observes, defendant raised an issue regarding the jury's consideration of the metadata in a posttrial motion filed on June 3, 2011. In the posttrial motion,

26

defendant alleged that two jurors gave media interviews, wherein they stated that the metadata contained dates that discredited the defense's timeline of events. Despite raising the issue in a posttrial motion, defendant failed to raise the issue on direct appeal. Because defendant clearly had knowledge of the jury's alleged reliance on the metadata when he filed the posttrial motion, he could have raised the issue on direct appeal but failed to do so. Thus, the issue is forfeited. See *id.* (issues that could have been raised on direct appeal, but were not, are forfeited).

¶ 75    We note, however, that the doctrine of forfeiture is "relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record." *Id*. (citing *People v. Williams*, 209 Ill. 2d 227, 233 (2004)). Here, defendant supported his due process claim with juror statements made in the 48 Hours episode and Republic-Times article. The exact statements the jurors made did not appear on the face of the original appellate record. Moreover, defendant alleged in his amended petition that trial counsel was ineffective for failing to investigate the jurors' statements. Defendant further alleged that because "no such inquiry was made, the arguments raised in this Petition were not properly brought before other reviewing courts." The State acknowledged this fact in its motion to dismiss, wherein it alleged that there was "no showing of when trial counsel learned of these interviews, but these interviews were outside the record and could not have been raised on direct appeal because of that." Under these limited circumstances, we excuse defendant's forfeiture.

¶ 76    We next consider the State's alternative argument that the circuit court properly denied defendant's due process claim on the basis that the metadata was not extraneous information. As previously noted, the circuit court held an evidentiary hearing on defendant's due process claim and determined that the metadata was not extraneous. After the circuit court holds an evidentiary

27

hearing where fact-finding and credibility determinations are involved, the court's decision will not be reversed unless it is manifestly erroneous. *Id.* ¶ 23. Manifest error is "clearly evident, plain, and indisputable" (internal quotation marks omitted), and a "decision is manifestly erroneous when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98.

¶ 77 Extraneous information that reaches the jury is presumed to be prejudicial if the defendant demonstrates that the information directly related to something at issue in the case and that it may have influenced the verdict. *People v. Collins*, 351 Ill. App. 3d 175, 179 (2004). The verdict will be set aside if the defendant was prejudiced as a result of improper communication or outside influence on the jury. *Hobley*, 182 Ill. 2d at 458.

¶ 78 Here, the circuit court found that the metadata was not extraneous because the metadata was attached to the exhibits when the exhibits were admitted into evidence at trial. The court's finding is supported by the evidence presented at the third-stage hearing, including the witness testimony presented by the State. The testimony demonstrated that the metadata was affixed to the back of the exhibits at the time the exhibits were admitted into evidence at trial, and that the metadata was included to assist the officer testifying at trial. The testimony clarified that the metadata was not improperly added to the exhibits before the exhibits were sent back to the jury during deliberations. Thus, the evidence presented at the hearing demonstrated that the jury did not receive information from an external source, nor did the jury conduct its own investigation.

¶ 79 Therefore, the evidence supported the circuit court's finding that the metadata was not extraneous information that reached the jury. Because the court's finding was not against the manifest weight of the evidence, we affirm the circuit court's denial of defendant's due process claim. We next consider whether the court erred by dismissing defendant's ineffective assistance claims at the second stage of the proceedings.

28

¶ 80                          B. Ineffective Assistance

¶ 81    Defendant next argues that he made a substantial showing of a violation of his right to

effective assistance of counsel where trial counsel (1) failed to object to or otherwise address the

metadata affixed to the back of Exhibits 26 through 29, (2) failed to introduce evidence or present

a forensic specialist regarding the fingerprint, palmprint, DVR faceplate, and damage to the

basement window, and (3) failed to properly and effectively challenge the DNA evidence

presented at trial. In response, the State argues that defendant failed to establish that he was

prejudiced by trial counsel's performance and, alternatively, that all of trial counsel's actions

constituted reasonable trial strategy.[7]

¶ 82    As previously noted, the circuit court dismissed the remainder of defendant's claims at the

second stage of the proceedings. This court reviews the circuit court's determination at the second

stage *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 83    Defendants have a constitutional right to the effective assistance of counsel under the sixth

amendment to the United States Constitution and the Illinois Constitution. U.S. Const., amends.

VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are governed by

the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*,

104 Ill. 2d 504 (1984) (adopting *Strickland*). "To prevail on a claim of ineffective assistance of

counsel, a defendant must demonstrate that counsel's performance was deficient and that the

deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36 (citing

*Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's

---

[7]The State makes a brief argument that the issues defendant raises regarding the fingerprint and DNA evidence could have been raised on appeal but were not and, thus, are forfeited. However, the State's argument conflicts with the allegation in the motion to dismiss that "counsel could not have raised the issue of their own ineffectiveness in the trial court and that claim is now being raised in the appropriate legal proceeding." Accordingly, we will not consider the State's argument regarding forfeiture on appeal.

performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "Based on the second-stage procedural posture of the instant case, the relevant question is whether the allegations of the petition, supported by the trial record and the accompanying affidavits, demonstrate a substantial constitutional deprivation which requires an evidentiary hearing." *People v. Makiel*, 358 Ill. App. 3d 102, 106 (2005). With this in mind, we consider defendant's specific claims.

¶ 84    In the present case, defendant alleged in the amended petition that trial counsel was ineffective for failing to object to the metadata and for failing to present or challenge certain evidence at trial. Defendant further alleged that "[c]umulatively, the deficiencies concerning the lack of action on counsel's part so prejudiced [him] as to deprive him of a fair trial." We agree with the State's assertion that defendant fails to show he was prejudiced by trial counsel's alleged errors. We find the State's reliance on *People v. White*, 2011 IL 109689, particularly persuasive. In *White*, our supreme court explained:

> "Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict 'may have resulted from the error and not the evidence' properly adduced at trial [citation]; or that there was a 'reasonable probability' of a different result had the evidence in question been excluded [citation]." *Id.* ¶ 133.

¶ 85    As the State correctly observes, this court conducted a closely-balanced analysis on direct appeal and concluded that the evidence against defendant was overwhelming. *Coleman*, 2014 IL App (5th) 110274, ¶ 128. Specifically, this court concluded that there was overwhelming circumstantial evidence against defendant, where "the evidence established that the victims were all dead before defendant left the house, there was no evidence that anyone else entered the house,

the threatening emails were sent from defendant's own Dell computer, and defendant had a clear motive for such heinous crimes." *Id.* We agree with the State's assertion that our prior analysis of the evidence applies in the instant case, and we fail to see how trial counsel's alleged deficient performance changed the outcome of defendant's trial. In other words, the allegations in defendant's amended petition fail to show there is a reasonable probability that, but for trial counsel's deficient performance, the result of the proceeding would have been different. Because the allegations in defendant's amended petition fail to show he was prejudiced by trial counsel's performance, he has not made a substantial showing that his right to effective assistance of counsel was violated at trial. Thus, defendant was not entitled to an evidentiary hearing on his ineffective assistance of counsel claims.

¶ 86     With regard to defendant's claim that trial counsel was ineffective for failing to object to the metadata, we note that defendant was unable to show prejudice for an additional reason. The allegations of prejudice in defendant's amended petition, along with the 48 Hours episode and Republic-Times article, attempt to impeach the jury's verdict with evidence regarding the method and process by which the jury's verdict was reached. "As a general rule, a jury verdict may not be impeached by the testimony of the jurors." *Hobley*, 182 Ill. 2d at 457. "This rule prevents the admission of a juror's affidavit to show the 'motive, method or process by which the jury reached its verdict.' " *Id.* (quoting *Holmes*, 69 Ill. 2d at 511).

¶ 87     Here, defendant's amended petition, relying on the juror statements made in the 48 Hours episode and Republic-Times article, alleged that the jury was deadlocked and that the metadata "was the sole cause of jurors arriving at a unanimous verdict for guilt." The amended petition further alleged that the "jury based their conviction on evidence which was never admitted and for which no foundation was laid." While the rule against verdict impeachment does not preclude the

31

jurors' statements that the jury considered the metadata, the rule does preclude the jurors' statements that the jury's consideration of the metadata caused the jury to believe the defense lacked credibility or that the metadata convinced the jury defendant was guilty. The precise statements that defendant relies upon in his amended petition to establish prejudice are statements that show the motive, method, or process by which the jury reached its verdict. We do not consider defendant's allegations of prejudice "well-pled" and need not take such allegations as true. Without the allegations precluded by the rule against verdict impeachment, defendant's amended petition fails to make a substantial showing that he was prejudiced by trial counsel's failure to object to the metadata.

¶ 88 Therefore, even taking defendant's allegations that trial counsel's performance was deficient as true, defendant's allegations failed to establish that he was prejudiced by counsel's performance. Accordingly, we conclude that the circuit court properly dismissed defendant's ineffective assistance claims at the second stage of the proceedings without an evidentiary hearing.

¶ 89                                    III. Conclusion

¶ 90 For the reasons stated, we affirm the judgment of the circuit court of Monroe County dismissing defendant's amended petition and *pro se* supplements.


¶ 91 Affirmed.